# Exhibit E

**NEW YORK STATE | Corrections and Community Supervision**

**ANDREW M. CUOMO**
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

## 2020 ANNUAL UPDATE

### DOCCS CONTINUES TO IMPROVE THE CONDITIONS AND REDUCE THE USE OF SEGREGATED CONFINEMENT IN ITS FACILITIES BY IMPLEMENTING NEW MEASURES BEYOND THOSE INCLUDED IN THE HISTORIC SETTLEMENT AGREEMENT IN <u>PEOPLES v. ANNUCCI</u>

*Since the historic agreement went into effect in April, 2016, DOCCS has eliminated the imposition of segregated confinement in a special housing unit for over forty (40) disciplinary infractions and reduced the number of incarcerated individuals serving sanctions in a Special Housing Unit ("SHU") by nearly fifty-eight (58%) percent.*

The Department is proud of the significant progress made since it entered into a multi-year agreement with the New York Civil Liberties Union (NYCLU) in 2016. Particular attention should be paid to the new measures that have been successfully implemented since the Department's publication of the 2019 Annual Report, including, without limitation, the commencement of Special Housing Unit (SHU) alternative programs at Southport and Upstate Correctional Facilities, the adoption of a monthly review process for providing discretionary time cuts to those individuals with Keeplock sanctions, and the introduction of a formal policy that credits individuals for pre-hearing confinement.

DOCCS has also eliminated the imposition of segregated confinement in a special housing unit for over forty (40) disciplinary infractions including, in part, those relating to the use and possession of alcoholic intoxicants and those relating to the use of narcotics and other controlled substances. Many of these changes were neither required by, nor included in, the Settlement Agreement, but were implemented by DOCCS on its own initiative to further advance the parties' mutual goal of reducing the use and improving the conditions of segregated confinement. As a result of these, and other changes, DOCCS has achieved the following significant and notable results since the agreement went into effect:[1]

- A reduction in the total number of incarcerated individuals housed in a SHU cell (regardless of sanction status) decreased by 50%, from 3,631 to 1,808
- A reduction in the number of incarcerated individuals serving a SHU sanction in a SHU cell by 58%

---

[1] These numbers are current through the end of the 2020 calendar year.

- A reduction in the number of incarcerated individuals serving a Keeplock sanction in a SHU cell by 58%
- A reduction in the number of individuals under the age of 22 housed in a SHU cell by 72%[2]
- A reduction in the median length of stay for incarcerated individuals serving a SHU sanction in a SHU cell by 20%
- A reduction in the number of individuals released from a SHU cell directly to the community by 47%

In addition to reducing the use of segregated confinement, the conditions have also been improved by providing individuals housed in SHU with a tablet which allows up to six hours of phone calls a day for greater access to support from family and friends, as well as educational material, TED talks, music, books and games.  These tablets are provided at no cost to the incarcerated individual or the State.  In 2020, there were 2,039,237 completed calls with an average length of 18 minutes, for a combined total of 35,793,038 minutes on the phone by incarcerated individuals in SHU. To the best of our knowledge, no other correctional system in the country has arranged for tablets to be provided to the incarcerated population in segregated confinement, that have the capability of being used for the placement of telephone calls. This is a critically important feature because research studies have shown that communication by telephone can be as beneficial as touching and seeing.  Telephone communication provides auditory social cues that are comforting to an individual.  A separate tablet is also available for access to the law library.

Further changes are also underway as a result of the new SHU regulations that were adopted on December 16, 2020.  These new regulations continue to advance this historic progress by, in part:

- Strictly prohibiting the placement of vulnerable incarcerated individuals such as adolescents, pregnant women, and the disabled within a special housing unit for segregated confinement.
- Limiting the placement of incarcerated individuals in segregated confinement for serious misconduct that creates significant risk to the safety and security of the correctional facilities and the individuals within.
- Expanding the use of specialized units by DOCCS where individuals released from segregated confinement will be housed before being returned to the general population area of the facility. While housed in these specialized units, incarcerated individuals will receive programming and treatment tailored to promote personal development and rehabilitation and staff assigned to these units will be required to undergo additional training.
- Ensuring that incarcerated individuals housed within one of the specialized units will be able to earn an early release back to the general population area of the facility by completing the programming assigned to them before the expiration of the imposed sanction.

---

[2] It should further be noted that since the 2019 Annual Report, all 16- and 17-year-olds have moved from DOCCS's custody to that of the Office for Children and Family Services.

- Ensuring that incarcerated individuals will not be denied essential services as a form of discipline and DOCCS will not impose restricted diets or any other changes in diet as punishment.
- Increasing training of all staff that work within special housing units on de-escalation techniques, implicit bias, trauma-informed care, and dispute resolution.

The Department has posted a complete set of the regulations on its website at:

https://doccs.ny.gov/system/files/documents/2020/12/shu-tor-11-29-20.pdf