Exhibit G

Legislative Information - LBDC

**S 2836** SALAZAR   Same as A 2277-A   Aubry
ON FILE: 01/25/21 Correction Law
TITLE....Restricts the use of segregated confinement and
creates alternative therapeutic and rehabilitative
confinement options
01/25/21     REFERRED TO CRIME VICTIMS,
               CRIME AND CORRECTION

**A2277-A** Aubry    Same as S 2836 SALAZAR
Correction Law
TITLE....Restricts the use of segregated confinement and
creates alternative therapeutic and rehabilitative
confinement options
01/14/21      referred to correction
02/05/21      amend and recommit to correction
02/05/21      print number 2277a

SALAZAR, ADDABBO, BAILEY, BENJAMIN, BIAGGI, BRESLIN, BRISPORT, BROOKS, BROUK,
COMRIE, COONEY, FELDER, GAUGHRAN, GIANARIS, GOUNARDES, HARCKHAM, HOYLMAN,
JACKSON, KAPLAN, KAVANAGH, KENNEDY, KRUEGER, LIU, MAY, MAYER, MYRIE, PARKER,
PERSAUD, RAMOS, REICHLIN-MELNICK, RIVERA, SANDERS, SAVINO, SEPULVEDA, SERRANO,
STAVISKY, THOMAS
Amd §§137, 138, 2, 401, 401-a, 500-k & 45, Cor L
Restricts the use of segregated confinement and creates alternative therapeutic and rehabilitative confinement
options; limits the length of time a person may be in segregated confinement and excludes certain persons from
being placed in segregated confinement.

# STATE OF NEW YORK

_____

2836

2021-2022 Regular Sessions

# IN SENATE

January 25, 2021

_____

Introduced  by  Sen. SALAZAR -- read twice and ordered printed, and when
  printed to be committed to the Committee on Crime Victims,  Crime  and
  Correction

AN  ACT  to amend the correction law, in relation to restricting the use
  of segregated confinement and  creating  alternative  therapeutic  and
  rehabilitative confinement options

  The  People of the State of New York, represented in Senate and Assem-
bly, do enact as follows:

1      Section 1. Subdivision 23 of section 2 of the correction law, as added
2   by chapter 1 of the laws of 2008, is amended to read as follows:
3      23. "Segregated confinement" means the [disciplinary]  confinement  of
4   an  inmate  in [a special housing unit or in a separate keeplock housing
5   unit. Special housing units and separate  keeplock  units  are  housing
6   units that consist of cells grouped so as to provide separation from the
7   general  population,  and may be used to house inmates confined pursuant
8   to the disciplinary procedures described in  regulations]  any  form  of
9   cell  confinement  for  more  than seventeen hours a day other than in a
10  facility-wide emergency or for  the  purpose  of  providing  medical  or
11  mental  health  treatment.  Cell  confinement that is implemented due to
12  medical or mental health treatment shall be within a  clinical  area  in
13  the  correctional  facility  or  in  as  close proximity to a medical or
14  mental health unit as possible.
15     § 2. Section 2 of the correction law is  amended  by  adding  two  new
16  subdivisions 33 and 34 to read as follows:
17     33.  "Special  populations"  means any person: (a) twenty-one years of
18  age or younger; (b) fifty-five years of age or older; (c) with a  disa-
19  bility  as defined in paragraph (a) of subdivision twenty-one of section
20  two hundred ninety-two of the executive law; or (d) who is pregnant,  in
21  the  first  eight  weeks of the post-partum recovery period after giving
22  birth, or caring for a child in a correctional institution  pursuant  to
23  subdivisions two or three of section six hundred eleven of this chapter.

EXPLANATION--Matter in **italics** (underscored) is new; matter in brackets
          [-] is old law to be omitted.

LBD00393-02-1

S. 2836                                    2

1    <u>34. "Residential rehabilitation unit" means a separate housing unit</u>
2    <u>used for therapy, treatment, and rehabilitative programming of incarcer-</u>
3    <u>ated people who have been determined to require more than fifteen days</u>
4    <u>of segregated confinement pursuant to department proceedings. Such units</u>
5    <u>shall be therapeutic and trauma-informed, and aim to address individual</u>
6    <u>treatment and rehabilitation needs and underlying causes of problematic</u>
7    <u>behaviors.</u>
8       § 3. Paragraph (a) of subdivision 6 of section 137 of the correction
9    law, as amended by chapter 490 of the laws of 1974, is amended to read
10   as follows:
11      (a) The inmate shall be supplied with a sufficient quantity of whole-
12   some and nutritious food[, provided, however, that such food need not be
13   the same as the food supplied to inmates who are participating in
14   programs of the facility];
15      § 4. Paragraph (d) of subdivision 6 of section 137 of the correction
16   law, as added by chapter 1 of the laws of 2008, is amended to read as
17   follows:
18      (d) (i) Except as set forth in clause (E) of subparagraph (ii) of this
19   paragraph, the department, in consultation with mental health clini-
20   cians, shall divert or remove inmates with serious mental illness, as
21   defined in paragraph (e) of this subdivision, from segregated confine-
22   <u>ment or confinement in a residential rehabilitation unit,</u> where such
23   confinement could potentially be for a period in excess of thirty days,
24   to a residential mental health treatment unit. Nothing in this para-
25   graph shall be deemed to prevent the disciplinary process from proceed-
26   ing in accordance with department rules and regulations for disciplinary
27   hearings.
28      (ii) (A) Upon placement of an inmate into segregated confinement <u>or a</u>
29   <u>residential rehabilitation unit</u> at a level one or level two facility, a
30   suicide prevention screening instrument shall be administered by staff
31   from the department or the office of mental health who has been trained
32   for that purpose. If such a screening instrument reveals that the inmate
33   is at risk of suicide, a mental health clinician shall be consulted and
34   appropriate safety precautions shall be taken. Additionally, within one
35   business day of the placement of such an inmate into segregated confine-
36   ment at a level one or level two facility, the inmate shall be assessed
37   by a mental health clinician.
38      (B) Upon placement of an inmate into segregated confinement <u>or a resi-</u>
39   <u>dential rehabilitation unit</u> at a level three or level four facility, a
40   suicide prevention screening instrument shall be administered by staff
41   from the department or the office of mental health who has been trained
42   for that purpose. If such a screening instrument reveals that the inmate
43   is at risk of suicide, a mental health clinician shall be consulted and
44   appropriate safety precautions shall be taken. All inmates placed in
45   segregated confinement <u>or a residential rehabilitation unit</u> at a level
46   three or level four facility shall be assessed by a mental health clini-
47   cian, within [fourteen] <u>seven</u> days of such placement into segregated
48   confinement.
49      (C) At the initial assessment, if the mental health clinician finds
50   that an inmate suffers from a serious mental illness, <u>that person shall</u>
51   <u>be diverted or removed from segregated confinement or a residential</u>
52   <u>rehabilitation unit and</u> a recommendation shall be made whether excep-
53   tional circumstances, as described in clause (E) of this subparagraph,
54   exist. In a facility with a joint case management committee, such recom-
55   mendation shall be made by such committee. In a facility without a joint
56   case management committee, the recommendation shall be made jointly by a

S. 2836                                          3

```
 1   committee  consisting  of  the  facility's highest ranking mental health
 2   clinician, the deputy superintendent for security, and the deputy super-
 3   intendent for program services, or their equivalents. Any such recommen-
 4   dation  shall  be reviewed by the joint central office review committee.
 5   The administrative process described in this clause shall  be  completed
 6   within  [fourteen]  seven  days  of  the  initial assessment, and if the
 7   result of such process is that the inmate should be removed from  segre-
 8   gated  confinement  or a residential rehabilitation unit, such removal
 9   shall occur as soon as practicable, but in no event more  than  seventy-
10   two hours from the completion of the administrative process. Pursuant to
11   paragraph  (h) of this subdivision, nothing in this section shall permit
12   the placement of an incarcerated person with serious mental illness into
13   segregated confinement at any time, even for the purposes of assessment.
14      (D) If an inmate with a serious mental  illness  is  not diverted  or
15   removed to a residential mental health treatment unit, such inmate shall
16   be  diverted  to  a  residential rehabilitation unit and reassessed by a
17   mental health clinician within fourteen days of  the  initial  assessment
18   and at least once every fourteen days thereafter.  After each such addi-
19   tional  assessment, a recommendation as to whether such inmate should be
20   removed from [segregated confinement] a residential rehabilitation unit
21   shall  be made and reviewed according to the process set forth in clause
22   (C) of this subparagraph.
23      (E) A recommendation or determination whether to remove an inmate from
24   segregated confinement or a residential rehabilitation unit  shall  take
25   into  account the assessing mental health clinicians' opinions as to the
26   inmate's mental condition and treatment needs, and shall also take  into
27   account  any  safety  and  security  concerns that would be posed by the
28   inmate's removal, even if additional restrictions  were  placed  on  the
29   inmate's  access  to  treatment,  property,  services or privileges in a
30   residential mental health treatment unit. A recommendation  or  determi-
31   nation  shall direct the inmate's removal from segregated confinement or
32   a residential rehabilitation unit except in  the  following  exceptional
33   circumstances: (1)  when  the  reviewer finds that removal would pose a
34   substantial risk to the safety of the inmate  or  other  persons,  or  a
35   substantial  threat  to the security of the facility, even if additional
36   restrictions were placed on the inmate's access to treatment,  property,
37   services or privileges in a residential mental health treatment unit; or
38   (2)  when  the  assessing  mental  health clinician determines that such
39   placement is in the inmate's best interests based on his or  her  mental
40   condition  and  that removing such inmate to a residential mental health
41   treatment unit would be detrimental to his or her mental condition.  Any
42   determination  not  to remove an inmate with serious mental illness from
43   segregated confinement or a residential  rehabilitation  unit  shall  be
44   documented in writing and include the reasons for the determination.
45      (iii)  Inmates  with  serious  mental  illness who are not diverted or
46   removed from [segregated confinement] a residential rehabilitation unit
47   shall  be  offered a heightened level of mental health care, involving a
48   minimum of [two] three hours [each day, five  days  a  week,]  daily  of
49   out-of-cell therapeutic treatment and programming. This heightened level
50   of care shall not be offered only in the following circumstances:
51      (A)  The  heightened level of care shall not apply when an inmate with
52   serious mental illness does not, in the reasonable judgment of a  mental
53   health  clinician,  require  the heightened level of care. Such determi-
54   nation shall be documented with a written statement of the basis of such
55   determination and shall be reviewed by the Central New York  Psychiatric
56   Center clinical director or his or her designee. Such a determination is
```

S. 2836                                4

```
 1  subject  to  change  should  the  inmate's  clinical status change. Such
 2  determination  shall  be reviewed and documented by a mental health clini-
 3  cian every thirty days, and in consultation with the  Central  New  York
 4  Psychiatric  Center  clinical  director  or his or her designee not less
 5  than every ninety days.
 6    (B) The heightened level  of  care  shall  not  apply  in  exceptional
 7  circumstances when providing such care would create an unacceptable risk
 8  to the safety and security of inmates or staff. Such determination shall
 9  be  documented  by  security  personnel  together with the basis of such
10  determination and shall be reviewed by the facility  superintendent,  in
11  consultation  with  a mental health clinician, not less than every seven
12  days for as long as the inmate remains  in  [segregated  confinement]  a
13  residential  rehabilitation unit.  The facility shall attempt to resolve
14  such exceptional circumstances so that the heightened level of care  may
15  be  provided.  If  such  exceptional circumstances remain unresolved for
16  thirty days, the matter shall be referred to the  joint  central  office
17  review committee for review.
18    (iv)  [Inmates  with  serious  mental  illness who are not diverted or
19  removed from segregated confinement shall not be placed on a  restricted
20  diet,  unless there has been a written determination that the restricted
21  diet is necessary for reasons of safety and security.  If a  restricted
22  diet is imposed, it shall be limited to seven days, except in the excep-
23  tional  circumstances  where  the joint case management committee deter-
24  mines that limiting the restricted diet to  seven  days  would  pose  an
25  unacceptable  risk  to  the  safety and security of inmates or staff. In
26  such case, the need for a restricted diet shall  be  reassessed  by  the
27  joint case management committee every seven days.
28    (v)]All  inmates in segregated confinement in a level one or level two
29  facility who are not assessed with  a  serious  mental  illness  at  the
30  initial assessment shall be offered at least one interview with a mental
31  health  clinician  within  [fourteen] seven days of their initial mental
32  health assessment, [and additional interviews at least every thirty days
33  thereafter,] unless the mental  health  clinician  at  the  most  recent
34  interview  recommends an earlier interview or assessment. All inmates in
35  [segregated confinement] a residential rehabilitation unit  in  a  level
36  three  or level four facility who are not assessed with a serious mental
37  illness at the initial assessment shall be offered at least  one  inter-
38  view  with a mental health clinician within thirty days of their initial
39  mental health assessment, and additional interviews at least every nine-
40  ty days thereafter, unless the  mental  health  clinician  at  the  most
41  recent interview recommends an earlier interview or assessment.
42    § 5. Subdivision 6 of section 137 of the correction law is amended by
43  adding eight new paragraphs (h), (i), (j), (k), (l), (m), (n) and (o) to
44  read as follows:
45    (h) Persons in a special population as defined in subdivision  thirty-
46  three  of  section two of this chapter shall not be placed in segregated
47  confinement for any length of time, except  in  keeplock  for  a  period
48  prior to a disciplinary hearing pursuant to paragraph (l) of this subdi-
49  vision.   Individuals in a special population who are in keeplock prior
50  to a disciplinary hearing shall be given seven hours a  day  out-of-cell
51  time  or  shall  be  transferred to a residential rehabilitation unit or
52  residential mental health treatment unit as expeditiously as  possible,
53  but in no case longer than forty-eight hours from the time an individual
54  is admitted to keeplock.
55    (i) No person may be placed in segregated confinement for longer than
56  necessary and no more than fifteen consecutive days or twenty total days
```

S. 2836                                    5

```
 1  within any sixty day period.  At these limits, he or she must be
 2  released from segregated confinement or diverted to a separate residen-
 3  tial rehabilitation unit. If placement of such person in segregated
 4  confinement would exceed the twenty-day limit and the department estab-
 5  lishes that the person committed an act defined in subparagraph (ii) of
 6  paragraph (k) of this subdivision, the department may place the person
 7  in segregated confinement until admission to a residential rehabili-
 8  tation unit can be effectuated. Such admission to a residential rehabil-
 9  itation unit shall occur as expeditiously as possible and in no case
10  take longer than forty-eight hours from the time such person is placed
11  in segregated confinement.
12    (j) (i) All segregated confinement and residential rehabilitation
13  units shall create the least restrictive environment necessary for the
14  safety of incarcerated persons, staff, and the security of the facility.
15    (ii) Persons in segregated confinement shall be offered out-of-cell
16  programming at least four hours per day, including at least one hour for
17  recreation. Persons admitted to residential rehabilitation units shall
18  be offered at least six hours of daily out-of-cell congregate program-
19  ming, services, treatment, and/or meals, with an additional minimum of
20  one hour for recreation. Recreation in all residential rehabilitation
21  units shall take place in a congregate setting, unless exceptional
22  circumstances mean doing so would create a significant and unreasonable
23  risk to the safety and security of other incarcerated persons, staff, or
24  the facility.
25    (iii) No limitation on services, treatment, or basic needs such as
26  clothing, food and bedding shall be imposed as a form of punishment. If
27  provision of any such services, treatment or basic needs to an individ-
28  ual would create a significant and unreasonable risk to the safety and
29  security of incarcerated persons, staff, or the facility, such services,
30  treatment or basic needs may be withheld until it reasonably appears
31  that the risk has ended.  The department shall not impose restricted
32  diets or any other change in diet as a form of punishment. Persons in a
33  residential rehabilitation unit shall have access to all of their
34  personal property unless an individual determination is made that having
35  a specific item would pose a significant and unreasonable risk to the
36  safety of incarcerated persons or staff or the security of the unit.
37    (iv) Upon admission to a residential rehabilitation unit, program and
38  mental health staff shall administer assessments and develop an individ-
39  ual rehabilitation plan in consultation with the resident, based upon
40  his or her medical, mental health, and programming needs. Such plan
41  shall identify specific goals and programs, treatment, and services to
42  be offered, with projected time frames for completion and discharge from
43  the residential rehabilitation unit.
44    (v) An incarcerated person in a residential rehabilitation unit shall
45  have access to programs and work assignments comparable to core programs
46  and work assignments in general population. Such incarcerated persons
47  shall also have access to additional out-of-cell, trauma-informed thera-
48  peutic programming aimed at promoting personal development, addressing
49  underlying causes of problematic behavior resulting in placement in a
50  residential rehabilitation unit, and helping prepare for discharge from
51  the unit and to the community.
52    (vi) If the department establishes that a person committed an act
53  defined in subparagraph (ii) of paragraph (k) of this subdivision while
54  in segregated confinement or a residential rehabilitation unit and poses
55  a significant and unreasonable risk to the safety and security of other
56  incarcerated persons or staff, the department may restrict such person's
```

S. 2836                                    6

1  participation in programming and out-of-cell activities as necessary for
2  the safety of other incarcerated persons and staff. If such restrictions
3  are imposed, the department must provide at least four hours out-of-cell
4  time daily, including at least two hours of therapeutic programming and
5  two hours of recreation, and must make reasonable efforts to reinstate
6  access to programming as soon as possible. In no case may such
7  restrictions extend beyond fifteen days unless the person commits a new
8  act defined herein justifying restrictions on program access, or if the
9  commissioner and, when appropriate, the commissioner of mental health
10  personally reasonably determine that the person poses an extraordinary
11  and unacceptable risk of imminent harm to the safety or security of
12  incarcerated persons or staff. Any extension of program restrictions
13  beyond fifteen days must be meaningfully reviewed and approved at least
14  every fifteen days by the commissioner and, when appropriate, by the
15  commissioner of mental health. Each review must consider the impact of
16  therapeutic programming provided during the fifteen-day period on the
17  person's risk of imminent harm and the commissioner must articulate in
18  writing, with a copy provided to the incarcerated person, the specific
19  reason why the person currently poses an extraordinary and unacceptable
20  risk of imminent harm to the safety or security of incarcerated persons
21  or staff. In no case may restrictions imposed by the commissioner extend
22  beyond ninety days unless the person commits a new act defined herein
23  justifying restrictions on program access.
24    (vii) Restraints shall not be used when incarcerated persons are
25  participating in out-of-cell activities within a residential rehabili-
26  tation unit unless an individual assessment is made that restraints are
27  required because of a significant and unreasonable risk to the safety
28  and security of other incarcerated persons or staff.
29    (k) (i) The department may place a person in segregated confinement
30  for up to three consecutive days and no longer than six days in any
31  thirty day period if, pursuant to an evidentiary hearing, it determines
32  that the person violated department rules which permit a penalty of
33  segregated confinement. The department may not place a person in segre-
34  gated confinement for longer than three consecutive days or six days
35  total in a thirty day period unless the provisions of subparagraph (ii)
36  of this paragraph are met.
37    (ii) The department may place a person in segregated confinement
38  beyond the limits of subparagraph (i) of this paragraph or in a residen-
39  tial rehabilitation unit only if, pursuant to an evidentiary hearing, it
40  determines by written decision that the person committed one of the
41  following acts and if the commissioner or his or her designee determines
42  in writing based on specific objective criteria the acts were so heinous
43  or destructive that placement of the individual in general population
44  housing creates a significant risk of imminent serious physical injury
45  to staff or other incarcerated persons, and creates an unreasonable risk
46  to the security of the facility:
47    (A) causing or attempting to cause serious physical injury or death to
48  another person or making an imminent threat of such serious physical
49  injury or death if the person has a history of causing such physical
50  injury or death and the commissioner and, when appropriate, the commis-
51  sioner of mental health or their designees reasonably determine that
52  there is a strong likelihood that the person will carry out such threat.
53  The commissioner of mental health or his or her designee shall be
54  involved in such determination if the person is or has been on the
55  mental health caseload or appears to require psychiatric attention. The

1  department and the office of mental health shall promulgate rules and
2  regulations pertaining to this clause;
3    (B) compelling or attempting to compel another person, by force or
4  threat of force, to engage in a sexual act;
5    (C) extorting another, by force or threat of force, for property or
6  money;
7    (D) coercing another, by force or threat of force, to violate any
8  rule;
9    (E) leading, organizing, inciting, or attempting to cause a riot,
10  insurrection, or other similarly serious disturbance that results in the
11  taking of a hostage, major property damage, or physical harm to another
12  person;
13    (F) procuring deadly weapons or other dangerous contraband that poses
14  a serious threat to the security of the institution; or
15    (G) escaping, attempting to escape or facilitating an escape from a
16  facility or escaping or attempting to escape while under supervision
17  outside such facility.
18    For purposes of this section, attempting to cause a serious disturb-
19  ance or to escape shall only be determined to have occurred if there is
20  a clear finding that the inmate had the intent to cause a serious
21  disturbance or the intent to escape and had completed significant acts
22  in the advancement of the attempt to create a serious disturbance or
23  escape. Evidence of withdrawal or abandonment of a plan to cause a seri-
24  ous disturbance or to escape shall negate a finding of intent.
25    (iii) No person may be placed in segregated confinement or a residen-
26  tial rehabilitation unit based on the same act or incident that was
27  previously used as the basis for such placement.
28    (iv) No person may be held in segregated confinement for protective
29  custody. Any unit used for protective custody must, at a minimum,
30  conform to requirements governing residential rehabilitation units.
31    (l) All hearings to determine if a person may be placed in segregated
32  confinement shall occur prior to placement in segregated confinement
33  unless a security supervisor, with written approval of a facility super-
34  intendent or designee, reasonably believes the person fits the specified
35  criteria for segregated confinement in subparagraph (ii) of paragraph
36  (k) of this subdivision. If a hearing does not take place prior to
37  placement, it shall occur as soon as reasonably practicable and at most
38  within five days of such placement unless the charged person seeks a
39  postponement of the hearing. Persons at such hearings shall be permitted
40  to be represented by any attorney or law student, or by any paralegal or
41  incarcerated person unless the department reasonably disapproves of such
42  paralegal or incarcerated person based upon objective written criteria
43  developed by the department.
44    (m) (i) Any sanction imposed on an incarcerated person requiring
45  segregated confinement shall run while the person is in a residential
46  rehabilitation unit and the person shall be discharged from the unit
47  before or at the time such sanction expires. If a person successfully
48  completes his or her rehabilitation plan before the sanction expires,
49  the person shall have a right to be discharged from the unit upon such
50  completion.
51    (ii) If an incarcerated person has not been discharged from a residen-
52  tial rehabilitation unit within one year of initial admission to such a
53  unit or is within sixty days of a fixed or tentatively approved date for
54  release from a correctional facility, he or she shall have a right to be
55  discharged from the unit unless he or she committed an act listed in
56  subparagraph (ii) of paragraph (k) of this subdivision within the prior

1  one hundred eighty days and he or she poses a significant and unreason-
2  able risk to the safety or security of incarcerated persons or staff. In
3  any such case the decision not to discharge such person shall be imme-
4  diately and automatically subjected to an independent review by the
5  commissioner and the commissioner of mental health or their designees. A
6  person may remain in a residential rehabilitation unit beyond the time
7  limits provided in this section if both commissioners or both of their
8  designees approve this decision. In extraordinary circumstances, a
9  person who has not committed an act listed in subparagraph (ii) of para-
10  graph (k) of this subdivision within the prior one hundred eighty days,
11  may remain in a residential rehabilitation unit beyond the time limits
12  provided in this section if both the commissioner and the commissioner
13  of mental health personally determine that such individual poses an
14  extraordinary and unacceptable risk of imminent harm to the safety or
15  security of incarcerated persons or staff.
16    (iii) There shall be a meaningful periodic review of the status of
17  each incarcerated person in a residential rehabilitation unit at least
18  every sixty days to assess the person's progress and determine if the
19  person should be discharged from the unit. Following such periodic
20  review, if the person is not discharged from the unit, program and
21  mental health staff shall specify in writing the reasons for the deter-
22  mination and the program, treatment, service, and/or corrective action
23  required before discharge. The incarcerated person shall be given access
24  to the programs, treatment and services specified, and shall have a
25  right to be discharged from the residential rehabilitation unit upon the
26  successful fulfillment of such requirements.
27    (iv) When an incarcerated person is discharged from a residential
28  rehabilitation unit, any remaining time to serve on any underlying
29  disciplinary sanction shall be dismissed. If an incarcerated person
30  substantially completes his or her rehabilitation plan, he or she shall
31  have any associated loss of good time restored upon discharge from the
32  unit.
33    (n) All special housing unit, keeplock unit and residential rehabili-
34  tation unit staff and their supervisors shall undergo a minimum of thir-
35  ty-seven hours and thirty minutes of training prior to assignment to
36  such unit, and twenty-one hours of additional training annually there-
37  after, on substantive content developed in consultation with relevant
38  experts, on topics including, but not limited to, the purpose and goals
39  of the non-punitive therapeutic environment, trauma-informed care,
40  restorative justice, and dispute resolution methods. Prior to presiding
41  over any hearings, all hearing officers shall undergo a minimum of thir-
42  ty-seven hours and thirty minutes of training, with one additional day
43  of training annually thereafter, on relevant topics, including but not
44  limited to, the physical and psychological effects of segregated
45  confinement, procedural and due process rights of the accused, and
46  restorative justice remedies.
47    (o) The department shall publish monthly reports on its website, with
48  semi-annual and annual cumulative reports, of the total number of people
49  who are in segregated confinement and the total number of people who are
50  in residential rehabilitation units on the first day of each month. The
51  reports shall provide a breakdown of the number of people in segregated
52  confinement and in residential rehabilitation units by: (i) age; (ii)
53  race; (iii) gender; (iv) mental health treatment level; (v) special
54  health accommodations or needs; (vi) need for and participation in
55  substance abuse programs; (vii) pregnancy status; (viii) continuous
56  length of stay in residential treatment units as well as length of stay

S. 2836                                    9

1   in the past sixty days; (ix) number of days in segregated confinement;
2   (x) a list of all incidents resulting in sanctions of segregated
3   confinement by facility and date of occurrence; (xi) the number of
4   incarcerated persons in segregated confinement by facility; and (xii)
5   the number of incarcerated persons in residential rehabilitation units
6   by facility.
7        § 6. Section 138 of the correction law is amended by adding a new
8   subdivision 7 to read as follows:
9        7. De-escalation, intervention, informational reports, and the with-
10  drawal of incentives shall be the preferred methods of responding to
11  misbehavior unless the department determines that non-disciplinary
12  interventions have failed, or that non-disciplinary interventions would
13  not succeed and the misbehavior involved an act listed in subparagraph
14  (ii) of paragraph (k) of subdivision six of section one hundred thirty-
15  seven of this article, in which case, as a last resort, the department
16  shall have the authority to issue misbehavior reports, pursue discipli-
17  nary charges, or impose new or additional segregated confinement sanc-
18  tions.
19       § 7. Subdivision 1 of section 401 of the correction law, as amended by
20  chapter 1 of the laws of 2008, is amended to read as follows:
21       1.   The commissioner, in cooperation with the commissioner of mental
22  health, shall establish programs, including but not limited to residen-
23  tial mental health treatment units, in such correctional facilities as
24  he or she may deem appropriate for the treatment of mentally ill inmates
25  confined in state correctional facilities who are in need of psychiatric
26  services but who do not require hospitalization for the treatment of
27  mental illness. Inmates with serious mental illness shall receive thera-
28  py and programming in settings that are appropriate to their clinical
29  needs while maintaining the safety and security of the facility.
30       The conditions and services provided in the residential mental health
31  treatment units shall be at least comparable to those in all residential
32  rehabilitation units, and all residential mental health treatment units
33  shall be in compliance with all provisions of paragraphs (i), (j), (k),
34  and (l) of subdivision six of section one hundred thirty-seven of this
35  chapter. Residential mental health treatment units that are either resi-
36  dential mental health unit models or behavioral health unit models shall
37  also be in compliance with all provisions of paragraph (m) of subdivi-
38  sion six of section one hundred thirty-seven of this chapter.
39       The residential mental health treatment units shall also provide the
40  additional mental health treatment, services, and programming delineated
41  in this section. The administration and operation of programs estab-
42  lished pursuant to this section shall be the joint responsibility of the
43  commissioner of mental health and the commissioner. The professional
44  mental health care personnel, and their administrative and support
45  staff, for such programs shall be employees of the office of mental
46  health. All other personnel shall be employees of the department.
47       § 8. Subparagraph (i) of paragraph (a) of subdivision 2 of section 401
48  of the correction law, as added by chapter 1 of the laws of 2008, is
49  amended to read as follows:
50       (i) In exceptional circumstances, a mental health clinician, or the
51  highest ranking facility security supervisor in consultation with a
52  mental health clinician who has interviewed the inmate, may determine
53  that an inmate's access to out-of-cell therapeutic programming and/or
54  mental health treatment in a residential mental health treatment unit
55  presents an unacceptable risk to the safety of inmates or staff. Such
56  determination shall be documented in writing and such inmate shall be

S. 2836                              10

1   removed to a residential rehabilitation unit that is not a residential
2   mental health treatment unit where alternative mental health treatment
3   and/or other therapeutic programming, as determined by a mental health
4   clinician, shall be provided.
5       § 9. Subdivision 5 of section 401 of the correction law, as added by
6   chapter 1 of the laws of 2008, is amended to read as follows:
7       5. (a) An inmate in a residential mental health treatment unit shall
8   not be sanctioned with segregated confinement for misconduct on the
9   unit, or removed from the unit and placed in segregated confinement or a
10  residential rehabilitation unit, except in exceptional circumstances
11  where such inmate's conduct poses a significant and unreasonable risk to
12  the safety of inmates or staff, or to the security of the facility and
13  he or she has been found to have committed an act or acts defined in
14  subparagraph (ii) of paragraph (k) of subdivision six of section one
15  hundred thirty-seven of this chapter. Further, in the event that such a
16  sanction is imposed, an inmate shall not be required to begin serving
17  such sanction until the reviews required by paragraph (b) of this subdi-
18  vision have been completed; provided, however that in extraordinary
19  circumstances where an inmate's conduct poses an immediate unacceptable
20  threat to the safety of inmates or staff, or to the security of the
21  facility an inmate may be immediately moved to [segregated confinement]
22  a residential rehabilitation unit. The determination that an immediate
23  transfer to [segregated confinement] a residential rehabilitation unit
24  is necessary shall be made by the highest ranking facility security
25  supervisor in consultation with a mental health clinician.
26      (b) The joint case management committee shall review any disciplinary
27  disposition imposing a sanction of segregated confinement at its next
28  scheduled meeting. Such review shall take into account the inmate's
29  mental condition and safety and security concerns. The joint case
30  management committee may only thereafter recommend the removal of the
31  inmate in exceptional circumstances where the inmate commits an act or
32  acts defined in subparagraph (ii) of paragraph (k) of subdivision six of
33  section one hundred thirty-seven of this chapter and poses a significant
34  and unreasonable risk to the safety of inmates or staff or to the secu-
35  rity of the facility. In the event that the inmate was immediately moved
36  to segregated confinement, the joint case management committee may
37  recommend that the inmate continue to serve such sanction only in excep-
38  tional circumstances where the inmate commits an act or acts defined in
39  subparagraph (ii) of paragraph (k) of subdivision six of section one
40  hundred thirty-seven of this chapter and poses a significant and unrea-
41  sonable risk to the safety of inmates or staff or to the security of the
42  facility. If a determination is made that the inmate shall not be
43  required to serve all or any part of the segregated confinement sanc-
44  tion, the joint case management committee may instead recommend that a
45  less restrictive sanction should be imposed. The recommendations made by
46  the joint case management committee under this paragraph shall be docu-
47  mented in writing and referred to the superintendent for review and if
48  the superintendent disagrees, the matter shall be referred to the joint
49  central office review committee for a final determination. The adminis-
50  trative process described in this paragraph shall be completed within
51  fourteen days. If the result of such process is that an inmate who was
52  immediately transferred to [segregated confinement] a residential reha-
53  bilitation unit should be removed from [segregated confinement] such
54  unit, such removal shall occur as soon as practicable, and in no event
55  longer than seventy-two hours from the completion of the administrative
56  process.

S. 2836                         11

1   § 10. Subdivision 6 of section 401 of the correction law,  as  amended
2   by chapter 20 of the laws of 2016, is amended to read as follows:
3     6.  The department shall ensure that the curriculum for new correction
4   officers, and other new department staff  who  will  regularly  work  in
5   programs providing mental health treatment for inmates, shall include at
6   least  eight  hours  of  training about the types and symptoms of mental
7   illnesses, the goals of  mental  health  treatment,  the  prevention  of
8   suicide  and  training  in  how to effectively and safely manage inmates
9   with mental illness. Such training may be provided  by  the  office  of
10  mental  health  or  the justice center for the protection of people with
11  special needs. All department staff who are transferring into a residen-
12  tial mental health treatment unit shall receive a minimum of eight addi-
13  tional hours of such training, and eight hours  of  annual  training  as
14  long as they work in such a unit. All security, program services, mental
15  health and medical staff with direct inmate contact shall receive train-
16  ing  each  year  regarding identification of, and care for, inmates with
17  mental illnesses. The department shall provide  additional  training  on
18  these  topics  on  an  ongoing basis as it deems appropriate.  All staff
19  working in a residential mental health treatment unit shall also receive
20  all training mandated in paragraph (n) of subdivision six of section one
21  hundred thirty-seven of this chapter.
22    § 11. Section 401-a of the correction law is amended by adding  a  new
23  subdivision 4 to read as follows:
24    4.  The  justice  center shall assess the department's compliance with
25  the provisions of  sections  two,  one  hundred  thirty-seven,  and  one
26  hundred  thirty-eight of this chapter relating to segregated confinement
27  and residential rehabilitation units and shall issue a public report, no
28  less than annually, with recommendations to the department and  legisla-
29  ture,  regarding  all  aspects of segregated confinement and residential
30  rehabilitation units in state correctional facilities including but  not
31  limited  to  policies and practices concerning: (a) placement of persons
32  in segregated confinement  and  residential  rehabilitation  units;  (b)
33  special  populations:  (c) length of time spent in such units; (d) hear-
34  ings and procedures: (e) programs, treatment and conditions of  confine-
35  ment in such units; and (f) assessments and rehabilitation plans, proce-
36  dures and discharge determinations.
37    § 12.  Section  45  of  the correction law is amended by adding a new
38  subdivision 18 to read as follows:
39    18. Assess compliance of local correctional facilities with the  terms
40  of  paragraphs  (h), (i), (j), (k), (l), (m), (n) and (o) of subdivision
41  six of section one hundred thirty-seven of this chapter. The  commission
42  shall issue a public report regarding all aspects of segregated confine-
43  ment  and residential rehabilitation units at least annually with recom-
44  mendations to local correctional facilities, the governor, the  legisla-
45  ture, including but not limited to policies and practices regarding: (a)
46  placement  of persons: (b) special populations: (c) length of time spent
47  in segregated confinement and residential treatment units; (d)  hearings
48  and procedures; (e) conditions, programs, services, care, and treatment:
49  and (f) assessments, rehabilitation plans, and discharge procedures.
50    § 13. Section 500-k of the correction law, as amended by chapter 2 of
51  the laws of 2008, is amended to read as follows:
52    § 500-k. Treatment of inmates. 1. Subdivisions five and six of section
53  one hundred thirty-seven of this chapter, except paragraphs (d) and  (e)
54  of subdivision six of such section, relating to the treatment of inmates
55  in  state  correctional facilities are applicable to inmates confined in
56  county jails; except that the report required by paragraph (f) of subdi-

S. 2836                                12

1  vision six of such section shall be made to a person designated to
2  receive such report in the rules and regulations of the state commission
3  of correction, or in any county or city where there is a department of
4  correction, to the head of such department.
5     2. Notwithstanding any other section of law to the contrary, subdivi-
6  sion thirty-four of section two of this chapter, and subparagraphs (i),
7  (iv) and (v) of paragraph (j) and subparagraph (ii) of paragraph (m) of
8  subdivision six of section one hundred thirty-seven of this chapter
9  shall not apply to local correctional facilities with a total combined
10 capacity of five hundred inmates or fewer.
11    § 14. This act shall take effect one year after it shall have become a
12 law.

Legislative Information - LBDC

# NEW YORK STATE SENATE
## INTRODUCER'S MEMORANDUM IN SUPPORT
### submitted in accordance with Senate Rule VI. Sec 1

**BILL NUMBER:** S2836

**SPONSOR:** SALAZAR

**TITLE OF BILL:**

An act to amend the correction law, in relation to restricting the use of segregated confinement and creating alternative therapeutic and rehabilitative confinement options

**PURPOSE:**

This bill will be known as the "Humane Alternatives to Long-Term Solitary Confinement" Act (the HALT Solitary Confinement Act.) This bill would limit the time an inmate can spend in segregated confinement, end the segregated confinement of vulnerable people, restrict the criteria that can result in such confinement, improve conditions of confinement, and create more humane and effective alternatives to such confinement.

**SUMMARY OF PROVISIONS:**

Section 1 clarifies that the bill's provisions apply to all types and locations of segregated confinement.

Section 2 defines "special populations" and "residential rehabilitation units".

Section 3 prohibits the use of special diets as punishment.

Section 4 provides for mental health screening and a heightened level of care for prisoners placed into segregated confinement or residential rehabilitation units.

Section 5 prohibits placement of individuals who are in one of the special populations in SHU and limits their keep-lock placement to 48 hours; prohibits placement of any inmate in segregated confinement for more than 15 consecutive days or 20 out of 60 days unless specific acts are committed while in such confinement; specifies certain conditions of confinement and programs within residential rehabilitation units; creates a safety exception for people committing serious disciplinary infractions in SHU and residential rehabilitation units; prohibits the use of restraints in the residential rehabilitation units unless necessary for safety and security; prohibits placement of individuals in protective custody in segregated confinement; provides for periodic review of a person's placement in residential rehabilitation units; reinstates lost good time for successful completion of the residential rehabilitation unit program goals; provides for training of staff; and provides for public reporting.

Section 6 creates a preference for non-disciplinary interventions by the department.

Section 7 provides that services in residential mental health treatment

units shall be at least comparable to services in residential rehabili-
tation units.

Section 8 provides that inmates in residential mental health treatment
units may be moved to residential rehabilitation units under certain
circumstances.

Section 9 limits the removal of inmates with mental illness from resi-
dential mental health units to residential rehabilitation units unless
they commit specified acts of misconduct.

Section 10 provides for staff training.

Section 11 provides for Justice Center oversight of segregated confine-
ment and residential rehabilitation units.

Section 12 provides for Commission of Correction oversight of segregated
confinement in jails.

Section 13 provides for sections of the law to apply to jails. Section
14 is the effective date.


<u>JUSTIFICATION:</u>

This bill aims to make New York's prison and jail practices more humane.
The bill limits the length of time anyone can spend in segregated
confinement, restricts the criteria that can result in such confinement,
provides additional procedural protections prior to such confinement,
and exempts certain vulnerable groups. The bill also provides an alter-
native mechanism for working with people who engage in serious violence
or other problematic behavior.

Studies have consistently found that subjecting people to segregated
confinement for twenty-two to twenty-four hours a day without meaningful
human contact, programming, or therapy can cause deep and permanent
psychological, physical, developmental, and social harm. People often
have more difficulty complying with prison rules after being placed in
segregated confinement. Segregated confinement can be particularly
devastating for certain vulnerable people, such as young or elderly
people, pregnant women, and people with disabilities or trauma histo-
ries. Other states have dramatically reduced the number of people in
segregated confinement, and seen positive benefits in terms of safety
and decreased violence.

Despite the tremendous harm caused by massive isolation of thousands of
incarcerated persons, New York prisons and jails currently impose segre-
gated confinement routinely for too long a period of time. On any given
day, there are nearly 3,000 people, disproportionately people of color,
in state prisons in Special Housing Units (SHU) and thousands more in
other forms of isolation. There are also hundreds of people in segre-
gated confinement in jails in New York City alone.  Despite claims that
segregated confinement is used in response to the most violent behavior,
five out of six disciplinary infractions that result in SHU time in New
York prisons are for non-violent conduct. Moreover, people routinely
suffer in segregated confinement for months, years, and even decades in
New York.

A growing chorus of individuals, organizations, and policy-makers has
called for a dramatic transformation and curtailment of the use of
segregated confinement. The United Nations Special Rapporteur on Torture
concluded that solitary confinement can amount to torture and recom-
mended abolishing its use beyond 15 days and prohibiting any use of
solitary for vulnerable groups or for purposes of punishment. The New
York Civil Liberties Union and others have issued reports documenting

the arbitrary and unjustified use of segregated confinement in New York and the negative impact its use has on incarcerated persons, staff, and safety in our prisons and communities. The New York State Bar Association has called upon the state and city corrections departments to profoundly restrict the use of segregated confinement, end segregated confinement beyond 15 days, adopt stringent criteria for any separation and ensure any separation is for the briefest period and in the least restrictive conditions practicable. This bill takes up the growing call to limit segregated confinement and provide more humane and effective alternatives.

## LEGISLATIVE HISTORY:

2016: S.2659 was Referred to Crime Victims, Crime and Correction
2017: S.4784 was Referred to Crime Victims, Crime and Correction
2018: S.4748 was amended and Recommitted to Crime Victims, Crime and Correction.
2018: Assembly passed the bill (A3080-B).
2019: S.1623 was Advanced to Third Reading
2020: S.1623 was Referred to Crime Victims, Crime and Correction

## FISCAL IMPLICATIONS:

To be determined.

## LOCAL FISCAL IMPLICATIONS:

To be determined.

## EFFECTIVE DATE:
This act will take effect one year after it becomes law.

197                                                    CHAP. 59

**shall be due no later than the first day of April two thousand twenty-
two.**
  § 2.  This  act shall take effect immediately and shall expire and be
deemed repealed one year after such date.


                              PART MMM

  Section 1.  Section 13 of chapter 141 of the laws of 1994, amending
the  legislative law and the state finance law relating to the operation
and administration of the legislature, as amended by section 1 of part
LLL of chapter 56 of the laws of 2020, is amended to read as follows:
  § 13.  This  act shall take effect immediately and shall be deemed to
have been in full force and effect as of April 1, 1994, provided that,
the  provisions of  section 5-a of  the legislative law as amended by
sections two and two-a of this act shall take effect on January 1, 1995,
and provided further that, the provisions of article 5-A of the legisla-
tive law as added by section eight of this act shall expire June 30,
[2021] 2022 when upon such date the provisions of such article shall be
deemed repealed; and provided further that section twelve of this act
shall be deemed to have been in full force and effect on and after April
10, 1994.
  § 2. This act shall not supersede the findings and determinations made
by  the  compensation  committee as  authorized pursuant to part HHH of
chapter 59 of the laws of 2018 unless a court of competent  jurisdiction
determines  that  such findings and determinations are invalid or other-
wise not applicable or in force.
  § 3. This act shall take effect  immediately,  provided,  however,  if
this  act shall take effect on or after June 30, 2021, this act shall be
deemed to have been in full force and effect on and after June 30, 2021.


                              PART NNN

  Section 1. Clauses (A) and (E) of subparagraph (ii) of  paragraph  (d)
of  subdivision  6 of section 137 of the correction law, as amended by a
chapter of the laws of 2021, amending the  correction  law  relating  to
restricting  the  use of segregated confinement and creating alternative
therapeutic and  rehabilitative  confinement  options,  as  proposed  in
legislative  bills numbers S. 2836 and A. 2277-A, are amended to read as
follows:
  (A) Upon placement of an inmate into segregated confinement or a resi-
dential rehabilitation unit at a level one  or  level  two  facility,  a
suicide  prevention  screening instrument shall be administered by staff
from the department or the office of mental health who has been  trained
for that purpose. If such a screening instrument reveals that the inmate
is  at risk of suicide, a mental health clinician shall be consulted and
appropriate safety precautions shall be taken. Additionally, within  one
business day of the placement of such an inmate into segregated confine-
ment  at  a  level  one or level two facility **or a residential rehabili-
tation unit**, the inmate shall be assessed by a mental health clinician.
  (E) A recommendation or determination whether to remove an inmate from
segregated confinement or a residential rehabilitation unit  shall  take
into  account the assessing mental health clinicians' opinions as to the
inmate's mental condition and treatment needs, and shall also take  into
account  any  safety  and  security  concerns that would be posed by the
inmate's removal, even if additional restrictions  were  placed  on  the
inmate's  access  to  treatment,  property,  services or privileges in a

residential mental health treatment unit. A recommendation or determi-
nation shall direct the inmate's removal from segregated confinement or
a residential rehabilitation unit except in the following exceptional
circumstances: (1) when the reviewer finds that removal would pose a
substantial risk to the safety of the inmate or other persons, or a
substantial threat to the security of the facility, even if additional
restrictions were placed on the inmate's access to treatment, property,
services or privileges in a residential mental health treatment unit; or
(2) when the assessing mental health clinician determines that such
placement is in the inmate's best interests based on his or her mental
condition and that removing such inmate to a residential mental health
treatment unit would be detrimental to his or her mental condition. Any
determination not to remove an inmate with serious mental illness from
[**segregated confinement or**] a residential rehabilitation unit shall be
documented in writing and include the reasons for the determination.

  § 2. Subparagraph (iv) of paragraph (d) of subdivision 6 of section
137 of the correction law, as amended by a chapter of the laws of 2021
amending the correction law relating to restricting the use of segre-
gated confinement and creating alternative therapeutic and rehabilita-
tive confinement options, as proposed in legislative bills numbers S.
2836 and A. 2277-A, is amended to read as follows:

  (iv) All inmates in segregated confinement in a level one or level two
facility **or a residential rehabilitation unit** who are not assessed with
a serious mental illness at the initial assessment shall be offered at
least one interview with a mental health clinician within seven days of
their initial mental health assessment, unless the mental health clini-
cian at the most recent interview recommends an earlier interview or
assessment. All inmates in a residential rehabilitation unit in a level
three or level four facility who are not assessed with a serious mental
illness at the initial assessment shall be offered at least one inter-
view with a mental health clinician within thirty days of their initial
mental health assessment, and additional interviews at least every nine-
ty days thereafter, unless the mental health clinician at the most
recent interview recommends an earlier interview or assessment.

  § 3. Paragraph (i) of subdivision 6 of section 137 of the correction
law, as added by a chapter of the laws of 2021 amending the correction
law relating to restricting the use of segregated confinement and creat-
ing alternative therapeutic and rehabilitative confinement options, as
proposed in legislative bills numbers S. 2836 and A. 2277-A, is amended
to read as follows:

  (i) **(i)** No person may be placed in segregated confinement for longer
than necessary and no more than fifteen consecutive days [**or**]**. Nor shall
any person be placed in segregated confinement for more than** twenty
total days within any sixty day period **except as otherwise provided in
subparagraph (ii) of this paragraph**. At these limits, he or she must be
released from segregated confinement or diverted to a separate residen-
tial rehabilitation unit. If placement of such person in segregated
confinement would exceed the twenty-day limit and the department estab-
lishes that the person committed an act defined in subparagraph (ii) of
paragraph (k) of this subdivision, the department may place the person
in segregated confinement until admission to a residential rehabili-
tation unit can be effectuated. Such admission to a residential rehabil-
itation unit shall occur as expeditiously as possible and in no case
take longer than forty-eight hours from the time such person is placed
in segregated confinement.

  (ii) For offenses determined pursuant to paragraph (l) of this subdi-
vision to constitute a violent felony act defined in subparagraph (ii)
of paragraph (k) of this subdivision, if occurring more than one time
within any sixty day period, up to an additional fifteen consecutive
days in segregated confinement may occur for each such additional inci-
dent. If such subsequent incident takes place in a residential rehabili-
tation unit or general population, the person may be returned to segre-
gated confinement for up to fifteen consecutive days. If such subsequent
incident takes place in segregated confinement and causes physical inju-
ry to another person, the person may receive up to an additional fifteen
consecutive days in segregated confinement, provided however that the
person must spend at least fifteen days in a residential rehabilitation
unit in between each placement of up to fifteen consecutive days in
segregated confinement. Custody under this subparagraph shall otherwise
be in accordance with this chapter.

  § 4. Subparagraphs (ii) and (v) of paragraph (j) of subdivision 6 of
section 137 of the correction law, as added by a chapter of the laws of
2021 amending the correction law relating to restricting the use of
segregated confinement and creating alternative therapeutic and rehabi-
litative confinement options, as proposed in legislative bills numbers
S. 2836 and A. 2277-A, are amended to read as follows:

  (ii) Persons in segregated confinement shall be offered out-of-cell
programming at least four hours per day, including at least one hour for
recreation. Persons admitted to residential rehabilitation units shall
be offered at least six hours of daily out-of-cell congregate program-
ming, services, treatment, recreation, activities and/or meals, with an
additional minimum of one hour for recreation. Recreation in all resi-
dential rehabilitation units shall take place in a congregate setting,
unless exceptional circumstances mean doing so would create a signif-
icant and unreasonable risk to the safety and security of other incar-
cerated persons, staff, or the facility. Persons in segregated confine-
ment and residential rehabilitation units shall be offered programming
led by program or therapeutic staff five days per week, except on recog-
nized state legal holidays. All other out-of-cell time may include peer-
led programs, time in a day room or out-of-cell recreation area with
other people, congregate meals, volunteer programs, or other congregate
activities.

  (v) An incarcerated person in a residential rehabilitation unit shall
have access to programs and work assignments comparable to core programs
and types of work assignments in general population. Such incarcerated
persons shall also have access to additional out-of-cell, trauma-in-
formed therapeutic programming aimed at promoting personal development,
addressing underlying causes of problematic behavior resulting in place-
ment in a residential rehabilitation unit, and helping prepare for
discharge from the unit and to the community.

  § 5. Clause (F) of subparagraph (ii) of paragraph (k) of subdivision 6
of section 137 of the correction law, as added by a chapter of the laws
of 2021 amending the correction law relating to restricting the use of
segregated confinement and creating alternative therapeutic and rehabi-
litative confinement options, as proposed in legislative bills numbers
S. 2836 and A. 2277-A, is amended to read as follows:

  (F) procuring a deadly [weapons] weapon or other dangerous contraband
that poses a serious threat to the security of the institution; or

  § 6. Paragraphs (n) and (o) of subdivision 6 of section 137 of the
correction law, as added by a chapter of the laws of 2021 amending the
correction law relating to restricting the use of segregated confinement

and creating alternative therapeutic and rehabilitative confinement options, as proposed in legislative bills numbers S. 2836 and A. 2277-A, are amended to read as follows:

(n) All special housing unit, keeplock unit and residential rehabilitation unit staff and their supervisors shall undergo [a minimum of thirty-seven hours and thirty minutes of] specialized training prior to assignment to such unit, and [twenty-one hours of additional training annually] regular specialized training thereafter, on substantive content developed in consultation with relevant experts, on topics including, but not limited to, the purpose and goals of the non-punitive therapeutic environment, trauma-informed care, restorative justice, and dispute resolution methods. Prior to presiding over any hearings, all hearing officers shall undergo a minimum of thirty-seven hours [and thirty minutes] of training, with one additional day of training annually thereafter, on relevant topics, including but not limited to, the physical and psychological effects of segregated confinement, procedural and due process rights of the accused, and restorative justice remedies.

(o) The department shall publish monthly reports on its website, with semi-annual and annual cumulative reports, of the total number of people who are in segregated confinement and the total number of people who are in residential rehabilitation units on the first day of each month. The reports shall provide a breakdown of the number of people in segregated confinement and in residential rehabilitation units by: (i) age; (ii) race; (iii) gender; (iv) mental health treatment level; (v) special health accommodations or needs; (vi) need for and participation in substance [abuse] use disorder programs; (vii) pregnancy status; (viii) continuous length of stay in residential treatment units as well as length of stay in the past sixty days; (ix) number of days in segregated confinement; (x) a list of all incidents resulting in sanctions of segregated confinement by facility and date of occurrence; (xi) the number of incarcerated persons in segregated confinement by facility; and (xii) the number of incarcerated persons in residential rehabilitation units by facility.

§ 7. Subdivision 7 of section 138 of the correction law, as added by a chapter of the laws of 2021 amending the correction law relating to restricting the use of segregated confinement and creating alternative therapeutic and rehabilitative confinement options, as proposed in legislative bills numbers S. 2836 and A. 2277-A, is amended to read as follows:

7. De-escalation, intervention, informational reports[,] and the withdrawal of incentives shall be the preferred methods of responding to misbehavior unless the department determines that non-disciplinary interventions have failed, or that non-disciplinary interventions would not succeed and the misbehavior involved an act listed in subparagraph (ii) of paragraph (k) of subdivision six of section one hundred thirty-seven of this article, in which case, as a last resort, the department shall have the authority to issue misbehavior reports, pursue disciplinary charges, or impose new or additional segregated confinement sanctions.

§ 8. Subparagraph (i) of paragraph (a) of subdivision 2 of section 401 of the correction law, as amended by a chapter of the laws of 2021 amending the correction law relating to restricting the use of segregated confinement and creating alternative therapeutic and rehabilitative confinement options, as proposed in legislative bills numbers S. 2836 and A. 2277-A, is amended to read as follows:

(i) In exceptional circumstances, a mental health clinician, or the highest ranking facility security supervisor in consultation with a mental health clinician who has interviewed the inmate, may determine that an inmate's access to out-of-cell therapeutic programming and/or mental health treatment in a residential mental health treatment unit presents an unacceptable risk to the safety of inmates or staff. Such determination shall be documented in writing and such inmate [shall] may be removed to a residential rehabilitation unit that is not a residential mental health treatment unit where alternative mental health treatment and/or other therapeutic programming, as determined by a mental health clinician, shall be provided.

§ 9. Subdivision 6 of section 401 of the correction law, as amended by a chapter of the laws of 2021 amending the correction law relating to restricting the use of segregated confinement and creating alternative therapeutic and rehabilitative confinement options, as proposed in legislative bills numbers S. 2836 and A. 2277-A, is amended to read as follows:

6. The department shall ensure that the curriculum for new correction officers, and other new department staff who will regularly work in programs providing mental health treatment for inmates, shall include at least eight hours of training about the types and symptoms of mental illnesses, the goals of mental health treatment, the prevention of suicide and training in how to effectively and safely manage inmates with mental illness. Such training may be provided by the office of mental health or the justice center for the protection of people with special needs. All department staff who are transferring into a residential mental health treatment unit shall receive a minimum of eight additional hours of such training, and eight hours of annual training as long as they work in such a unit. All security, program services, mental health and medical staff with direct inmate contact shall receive training each year regarding identification of, and care for, inmates with mental illnesses. The department shall provide additional training on these topics on an ongoing basis as it deems appropriate. All staff working in a residential mental health treatment unit shall also receive [all] the training mandated in paragraph (n) of subdivision six of section one hundred thirty-seven of this chapter.

§ 10. This act shall take effect on the same date and in the same manner as a chapter of the laws of 2021, amending the correction law relating to restricting the use of segregated confinement and creating alternative therapeutic and rehabilitative confinement options, as proposed in legislative bills numbers S. 2836 and A. 2277-A, takes effect.


PART OOO


Section 1. Subdivision 1 of section 1351 of the racing, pari-mutuel wagering and breeding law, as added by chapter 174 of the laws of 2013, is amended to read as follows:

1. (a) For a gaming facility in zone two, there is hereby imposed a tax on gross gaming revenues. The amount of such tax imposed shall be as follows; provided, however, should a licensee have agreed within its application to supplement the tax with a binding supplemental fee payment exceeding the aforementioned tax rate, such tax and supplemental fee shall apply for a gaming facility: