UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

NEW YORK STATE CORRECTIONAL OFFICERS AND
POLICE BENEVOLENT ASSOCIATION, *et al*.,

*Plaintiffs*,

-against-

1:21-CV-0535

KATHY HOCHUL, in her official capacity as Governor of
the State of New York[1], *et al*.,

(MAD/CFH)

*Defendants*.

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)

LETITIA JAMES
Attorney General
State of New York
*Attorney for the Defendants*
The Capitol
Albany, New York 12224-0341

BRIAN W. MATULA
Assistant Attorney General
Bar Roll No. 511717
Tel.: 518-776-2599
Brian.Matula@ag.ny.gov

MICHAEL G. McCARTIN
Assistant Attorney General | Special Counsel
Bar Roll No. 511158
Tel.: 518-776-2620
Michael.McCartin@ag.ny.gov

September 20, 2021

---

[1] Governor Kathy Hochul succeeded Andrew M. Cuomo as Governor of the State of New York on August 24, 2021. Accordingly, Governor Hochul has been automatically substituted as a defendant. *See* Fed. R. Civ. P. 25(d). We respectfully request that the Court direct the Clerk of the Court to modify the Court's electronic docket accordingly.

# Table of Contents

PRELIMINARY STATEMENT…………………………………………………………...….1

STATEMENT OF FACTS………………………………………………………………..….4

A.   The HALT Act……………………………………………………………………….4

B.   Peoples, et al. v. Annucci, et al. and the NYCLU Settlement……………………….....6

C.   Plaintiffs' Allegations……………………………………………………….……….8

ARGUMENT………………………………………………………………………….......9

POINT I……………………………………………………………………………..….9

      PLAINTIFFS LACK STANDING TO SUE BECAUSE THEIR CLAIM OF POSSIBLE
      FUTURE INJURY FROM THE CRIMES OF THIRD PARTIES IS INSUFFICIENT TO
      SATISFY ARTICLE III…………………………………………………………...….9

POINT II……………………………………………………………………………....14

      THE POLITICAL QUESTION DOCTRINE DEPRIVES THIS COURT OF
      JURISDICTION TO ALTER WHAT THE N.Y.S. LEGISLATURE HAS
      DETERMINED IS THE CORRECT MAXIMUM SENTENCE FOR SHU IN THE
      CORRECTIONAL FACILITIES WITHIN DOCCS…………………………………....14

POINT III…………………………………………………………………………..….17

      PLAINTIFFS' CLAIM AGAINST NEW YORK STATE AND DOCCS MUST BE
      DISMISSED BECAUSE IT IS BARRED BY THE ELEVENTH AMENDMENT…....17

POINT IV…………………………………………………………………………..….18

      PLAINTIFFS' STATE-CREATED DANGER DOCTRINE CLAIMS FAIL AS A
      MATTER OF LAW BECAUSE SUCH CLAIMS ARE NOT COGNIZABLE UNDER
      U.S. SUPREME COURT PRECEDENT, AND BECAUSE PLAINTIFFS CANNOT
      ESTABLISH THE NECESSARY CONSCIENCE-SHOCKING BEHAVIOR ON THE
      PART OF THE DEFENDANTS…………………………………………………..….18

POINT V……………………………………………………………………………….23

      THIS COURT SHOULD NOT REVIEW, MODIFY, OR INVALIDATE THE COURT-
      APPROVED NYCLU SETTLEMENT ENTERED IN THE SOUTHERN DISTRICT OF
      NEW YORK…………………………………………………………………..….23

CONCLUSION………………………………………………………………………..24

=

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Arpaio v. Obama*,
   797 F.3d 11 (D.C. Cir. 2015) ................................................................................ 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................... 2

*Baker v. Carr*,
   369 U.S. 186 (1962) ....................................................................................... 14-15

*Bano v. Union Carbide Corp.*,
   361 F.3d 696 (2d Cir. 2004) ............................................................................... 14

*Barber v. Rome Hous. Auth.*,
   No. 6:16-cv-1529, 2018 U.S. Dist. LEXIS 54211 (N.D.N.Y. Mar. 30, 2018) (D'Agostino,
   J.) ................................................................................................................... 20-22

*Benzman v. Whitman*,
   523 F.3d 119 (2d Cir. 2008) ............................................................................... 20

*Billips v. DOCCS*,
   2017 U.S. Dist. LEXIS 199277 (S.D.N.Y. Nov. 28, 2017) ...................................... 17

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ........................................................................................... 12

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ........................................................................................... 10

*Collins v. Harker Heights*,
   503 U.S. 115 (1992) ....................................................................................... 19-20

*Corr. Officers' Benevolent Ass'n v. City of N.Y.*,
   2018 U.S. Dist. LEXIS 90457 (S.D.N.Y. May 30, 2018) ........................................ 21

*Cruz v. N.Y. City Hous. Auth.*,
   2004 WL 1970143 (S.D.N.Y. Sept. 3, 2004) ....................................................... 19

*De Maurez v. Swope*,
   110 F.2d 564 (9th Cir. 1940) ............................................................................. 24

*Dwares v. City of New York*,
   985 F.2d 94 (2d Cir. 1993), overruled on other grounds *by Leatherman v. Tarrant*
   *Cty. Narcotics Intel. & Coord. Unit*, 507 U.S. 163 (1993) ...................................................................... 18

*Elk Grove Unified Sch. Dist. v. Newdow*,
   542 U.S. 1 (2004) ........................................................................................................................... 9

*Estate of Phillips v. D.C.*,
   455 F.3d 397, 372 U.S. App. D.C. 312 (D.C. Cir. 2006)........................................................................ 22

*Ex parte Young*,
   209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)................................................................................ 18

*Feinberg v. Apple, Inc.*,
   2016 U.S. Dist. LEXIS 105703 (S.D.N.Y. Aug. 10, 2016).................................................................. 10-11

*Fenstermaker v. Obama*,
   354 F. App'x 452 (2d Cir. 2009) .......................................................................................................... 9

*Gollomp v. Spitzer*,
   568 F.3d 355 (2d Cir. 2009) .............................................................................................................. 17

*Harper v. Trans Union, LLC*,
   2005 U.S. Dist. LEXIS 4721 (E.D. Pa. Mar. 24, 2005)............................................................................ 24

*Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*,
   542 F.3d 529 (6th Cir. 2008).............................................................................................................. 22

*Illinois v. Krull*,
   480 U.S. 340 (1987) ........................................................................................................................... 3

*In re. Persico*,
   362 F. Supp. 713 (E.D.N.Y. 1973)....................................................................................................... 24

*Japan Whaling Ass'n. v. American Cetacean Soc.*,
   478 U.S. 221 (1986) ......................................................................................................................... 15

*Kaucher v. Cty. of Bucks*,
   455 F.3d 418 (3d Cir. 2006) .............................................................................................................. 19

*Laufer v. Laxmi & Sons, LLC*,
   2020 WL 6940734 (N.D.N.Y. Nov. 19, 2020) ...................................................................................... 13

*Lewis v. County of Sacramento*,
   523 U.S. 833 (1998) ......................................................................................................................... 19

*Lombardi v. Whitman*,
   485 F.3d 73 (2d Cir. 2007) ................................................................................................................ 20

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ..................................................................................................... 9-10

*Massone v. Washington*,
  2021 U.S. Dist. LEXIS 163860 (S.D.N.Y. Aug. 30, 2021) ......................................... 13

*McGinley v. Houston*,
  2003 U.S. Dist. LEXIS 14947 (S.D. Ala. Aug. 27, 2003) .......................................... 24

*McMorris v. Carlos Lopez & Assocs., LLC*,
  995 F.3d 295 (2d Cir. 2021) ..................................................................................... 10

*Medina v. City of N.Y.*,
  2020 U.S. Dist. LEXIS 222887 (S.D.N.Y. Nov. 30, 2020) ....................................... 11

*Mistretta v. United States*,
  488 U.S. 361 (1989) ("Congress, of course, has the power to fix the sentence for a
  federal crime, United States v. Wiltberger, 5 Wheat. 76 (1820), and the scope of
  judicial discretion with respect to a sentence is subject to congressional control. Ex
  parte United States, 242 U.S. 27 (1916)") ............................................................... 16

*New York v. United States DOC*,
  351 F. Supp. 3d 502 (S.D.N.Y. 2019) ....................................................................... 14

*Okin v. Vill. of Cornwall-On-Hudson Police Dep't*,
  577 F.3d 415 (2d Cir. 2009) ..................................................................................... 18

*Peck v. Baldwinsville Cent. Sch. Dist.*,
  351 F. App'x 477 (2d Cir. 2009) ............................................................................... 13

*Peoples, et al. v. Annucci, et al.*,
  180 F Supp 3d 294 (S.D.N.Y. 2016) ......................................................................... 6-7

*Peoples, et al. v. Annucci, et al.*,
  No. 11 CV 2694 (S.D.N.Y.) .................................................................................... 1, 6-8

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
  506 U.S. 139 (1993) ................................................................................................. 18

*Raines v. Byrd*,
  521 U.S. 811 (1997) ................................................................................................... 9

*Robischung-Walsh v. Nassau County Police Dep't*,
  421 Fed. App'x. 38 (2d Cir. 2011) ........................................................................... 19

*Rodriguez v. Winski*,
  444 F.Supp. 3d 488 (S.D.N.Y. 2020) ....................................................................... 13

*Samish Indian Nation v. United States,*
    419 F.3d 1355 (Fed. Cir. 2005) ................................................................................ 15

*Santiago v. New York State Dep't of Corr. Serv.,*
    945 F.2d 25 (2d Cir. 1991) .................................................................................... 17

*Schlesinger v. Reservists Comm. to Stop the War,*
    418 U.S. 208 (1974) ............................................................................................ 15

*Speakman v. Williams,*
    841 F. App'x 382 (3d Cir. 2021) .......................................................................... 22

*Totes-Isotoner Corp. v. United States,*
    594 F.3d 1346 (Fed. Cir. 2010) ............................................................................ 14

*TransUnion LLC v. Ramirez,*
    No. 20-297, 2021 U.S. LEXIS 3401 (U.S. Supreme Court June 25, 2021) ................ 9

*United States ex rel. Joseph v. Cannon,*
    206 U. S. App. D. C. 405, 642 F.2d 1373 (1981), cert. denied, 455 U.S. 999 (1982) ........... 15

*United States v. American Radiator & Standard Sanitary Corp.,*
    388 F.2d 201 (3rd Cir. 1967) ................................................................................ 24

*United States v. Evans,*
    333 U.S. 483 (1948) ............................................................................................ 16

*United States v. Johnson,*
    616 F.3d 85 (2d Cir. 2010) .................................................................................. 22

*United States v. Stanley,*
    928 F.2d 575 (2d Cir. 1991) ................................................................................ 16

*United States v. Wheeler,*
    886 F.3d 415 (4th Cir. 2018) .............................................................................. 16

*United States v. White,*
    869 F.2d 822 (5th Cir. 1989) .............................................................................. 16

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,*
    535 U.S. 635 (2002) ............................................................................................ 18

*W. Mohegan Tribe & Nation v. Orange Cty.,*
    395 F.3d 18 (2d Cir. 2004) .................................................................................. 17

*Walker v. Rowe,*
    791 F.2d 507 (7th Cir. 1986) ........................................................................ 19, 23

*Warth v. Seldin,*
   422 U.S. 490 (1975) ................................................................................. 13

*Whitmore v. Arkansas,*
   495 U.S. 149 (1990) .............................................................................. 9-10

**CONSTITUTIONS**

Eleventh Amendment ................................................................................. 3, 17-18

Fourteenth Amendment ....................................................................................... 8

U.S. Const. amend. XI ........................................................................................ 17

U.S. Const.
   art. III, § 2 ........................................................................................................ 9

**FEDERAL STATUTES**

42 U.S.C.
   § 1983 ........................................................................................................ 17-18

**STATE STATUTES**

Correction Law amendments .................................................................................. 5

Correction Law
   § 2(34) ......................................................................................................... 4-5

DOCCS, the HALT Act ........................................................................................... 4

HALT Act ................................................................................................... passim

HALT Act into law. The HALT Act ........................................................................... 4

Humane Alternatives to Long-Term Solitary Confinement Act ...................................... 1

**RULES**

F.R.C.P.
   Rule 12(b)(1) ................................................................................................ 24
   Rule 12(b)(6) ........................................................................................... 22, 24

Fed. R. Civ. P. 12(b)(1) ........................................................................................ 4

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 4

Defendants Governor Kathy Hochul, sued in her official capacity as Governor of the State of New York, the State of New York, the New York State Department of Corrections and Community Supervision ("DOCCS"), and Anthony Annucci, sued in his official capacity as Acting Commissioner of DOCCS ("Defendants"), respectfully submit this memorandum of law, together with the Declaration of Assistant Attorney General Brian Matula ("Matula Decl.") and exhibits, in support of their motion to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedures 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs, the New York State Correctional Officers and Police Benevolent Association, Inc. ("NYSCOPBA") and six individual DOCCS employees[2] who are members of NYSCOPBA ("Plaintiffs"), bring this purported class action challenging the constitutionality of the Humane Alternatives to Long-Term Solitary Confinement Act ("HALT Act"). The HALT Act, enacted on March 31, 2021 with an effective date of March 31, 2022, among other things, imposes a 15-day limitation on the amount of time incarcerated individuals can spend in Special Housing Units ("SHU"). Plaintiffs assert that this limitation of SHU time to 15 days is far too "lenient" and thus it will lead directly to incarcerated individuals assaulting DOCCS Correction Officers and Sergeants. Compl. ¶ 26. For this, Plaintiffs exclusively seek declaratory and prospective injunctive relief. *Id.*, ¶ 2.

Similarly, Plaintiffs seek to enjoin Defendants from enforcing all policies, procedures, and regulations adopted pursuant to an April 14, 2016 Court-approved settlement agreement reached in *Peoples, et al. v. Annucci, et al.*, No. 11 CV 2694 (S.D.N.Y.)[3] ("NYCLU Settlement"), an action

---

[2] The six DOCCS individuals are Sergeant Thomas Hannah, Correction Officer ("CO") Chloe Hayes, CO Erik Mesunas, CO Kerri Montgomery, CO Sarah Tompkins, and CO Alexander Voitsekhovski.

[3] A copy of the Court-approved settlement agreement reached in *Peoples, et al. v. Annucci, et al.* is annexed

brought by the New York Civil Liberties Union on behalf of a class of incarcerated individuals against DOCCS officials challenging the solitary confinement practices in DOCCS.  *See* Compl. p. 64.  Even though Plaintiffs were not parties in *Peoples, et al. v. Annucci*, *et al*., and the NYCLU Settlement was Court-approved more than five years ago, Plaintiffs seek to upend the NYCLU settlement, enjoin the policies and procedures adopted by DOCCS as a result of the NYCLU Settlement, and annul the 2019 DOCCS regulations related to SHU. Compl. p.64, Wherefore Clause, (a)-(h).  They seek this unprecedented relief by alleging nothing more than conclusory assertions based on speculation of what the future holds regarding their safety within DOCCS' correctional facilities.  *Id*., ¶ 28.

Plaintiffs' speculation about what the future holds for them must be summarily rejected by this Court on this motion to dismiss because there are no adequate grounds to assume that this conclusory assertion is true.  A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Because Plaintiffs cannot make a plausible case showing that the HALT Act will lead to prisons with *more* assaults on security staff, standing is lacking.  This is so because, when one is seeking prospective injunctive relief, standing always requires sufficient proof of a real, concrete harm in the future.  Pure conjecture related to such future harm – of the type Plaintiffs are guilty of here – is not plausible proof.

The fact is that the N.Y.S. Legislature, after considering all of the "pros" and "cons" in the debates regarding the challenged legislation, made a thoughtful, considered choice, one that undoubtedly reflects the will of the people of New York State.  For the reasons that follow,

---

to Matula Decl., Ex. 1.

therefore, the Court should not disturb the Legislature's intent formed though a democratic process, which is properly *presumed to be constitutional*.  *See Illinois v. Krull*, 480 U.S. 340, 351 (1987) ("courts presume that legislatures act in a constitutional manner").

This case should be dismissed for five separate reasons. *First* and foremost, Plaintiffs lack standing to sue here because their allegations of *possible* future injury due to nonparties committing crimes against them in the future are not enough to satisfy Article III.  In other words, despite Plaintiffs' prediction as to what their future holds, they cannot adequately guess as to what crimes incarcerated individuals *might* commit against them in 2022, and in subsequent years. Thus, Plaintiffs cannot establish standing because they can point to no definite, concrete harm.

*Second,* the political question doctrine likewise deprives this Court of jurisdiction to hear this case and to alter what the N.Y.S. Legislature has determined is the correct maximum sentence for SHU in the correctional facilities within DOCCS.  In other words, the issues at play here are simply legislative in nature, and they are not to be tampered with in any way by the federal judiciary.

*Third*, Plaintiffs' second claim addressing the 15-day SHU maximum imposed by the HALT Act, which is against New York State and DOCCS, must be dismissed because it is barred by the Eleventh Amendment.

*Fourth,* Plaintiffs' state-created danger doctrine claims fail as a matter of law because such claims are simply not cognizable for state employees to make under binding U.S. Supreme Court precedent, and because Plaintiffs cannot establish the necessary conscience-shocking behavior on the part of Defendants.  Therefore, even if this Court were to find that Plaintiffs have standing, and that it has jurisdiction despite the political question doctrine, and even if immunity did not apply, Plaintiffs still cannot prevail here because there is a clear case for dismissal based on the

controlling case law.

*Fifth* and finally, since the law does not allow a party to file a "horizontal appeal" from one district court judge to another district court judge of the same rank, Plaintiffs' challenge to the NYCLU Settlement must be dismissed.

Again, for all of these reasons, complete dismissal under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) is the only appropriate outcome here.

## STATEMENT OF FACTS

A.   **The HALT Act**

On March 31, 2021, the Governor of New York signed the HALT Act into law.  The HALT Act provides for what is essentially a sea change in DOCCS policy, as it is meant to reorient the correctional system away from punishment by isolation.  As the Governor's statement upon the signing of this legislation said: "The expanded program model enacted by the HALT [Act] will better address an individual's underlying criminogenic needs and provide greater rehabilitative impacts to change behavior, leading to positive outcomes for individuals transitioning back to the general population."  Matula Decl., Ex. 2.

To advance these goals of emphasizing treatment and rehabilitation of incarcerated individuals within DOCCS, the HALT Act essentially does the following eight things.  First, it broadly defines "segregated confinement," taking in all forms of confinement that exceeds 17 hours of segregation per day, and it further protects incarcerated people held in SHU, keep-lock, involuntary protective custody, and voluntary protective custody.   Correction Law § 2(34). Second, it prohibits long-term segregated confinement by limiting the time spent in such confinement to not more than 15 consecutive days, or 20 days total in any 60-day period.  *Id.*, § 137(6)(i).  Third, it bans segregated confinement of special/vulnerable populations, *i.e.*, those

who are 21 years or younger; those who are 55 years or older; anyone with a physical, mental, or medical disability; anyone pregnant; anyone in the first 8 weeks of post-partum recovery period; or anyone who is a new mother or caring for a child while in a correctional facility. *Id*., §§ 2(33), 137(6)(h). Fourth, it requires six (6) hours of out-of-cell programming plus one (1) hour of out-of-cell recreation per day for all incarcerated people. *Id*., § 137(6)(j)(ii). Fifth, it creates alternatives to segregated confinement and applies limitations for alternatives by requiring Residential Rehabilitation Units ("RRUs") – *i.e.*, units with access to support, services, and programs for behavioral needs, as well as six (6) hours out-of-cell programming plus one (1) hour of out-of-cell recreation, and 60-day reviews for release determinations. *Id*., § 2(34). Sixth, it allows reinstatement of credit toward early release for successful completion of RRUs and consideration for early release from prison. *Id*., § 137(6)(m)(i). Seventh, it requires necessary training for staff on de-escalation techniques, implicit bias, restorative justice, trauma-informed care, and dispute resolution. *Id*., § 137(6)(n). And lastly, it requires the public reporting of who is being held in other than general population, who is being held in RRUs, and for how long. *Id*., § 137(6)(o). S*ee also* Matula Decl., Ex.2 ("The Laws of 2021, Chap. 93," providing the amendments to the Correction Law).

The HALT Act built upon DOCCS regulations, as well as historic reductions in segregated confinement that resulted from the NYCLU settlement. Matula Decl., Ex. 4. In response to DOCCS 2020 regulations, the funding in the FY 2020 Enacted Budget provided for significant infrastructure changes to program space and to fund counselors, teachers, and other program staff for the RRUs. These reforms resulted in: (1) a reduction in the total number of individuals housed in a SHU cell (regardless of sanction status) by 50 percent; (2) a reduction in the number of individuals serving a SHU sanction in a SHU cell by 58 percent; (3) a reduction in the number of

individuals under the age of 22 housed in a SHU cell by 72 percent; and (4) a reduction in the median length of stay for individuals serving a SHU sanction in a SHU cell by 20 percent.[4]

B.    ***Peoples, et al. v. Annucci, et al.* and the NYCLU Settlement**

In April 18, 2011, Leroy Peoples sued representatives of DOCCS, challenging DOCCS's use of segregated confinement and the conditions incarcerated individuals were subjected to in SHU confinement. *See Peoples, et al. v. Annucci*, *et al.*, 180 F Supp 3d 294, 297 (S.D.N.Y. 2016). During the course of litigation, the New York Civil Liberties Union began serving as Counsel to the Plaintiffs. *See generally Peoples, et al. v. Annucci*, *et al.*, No. 11 CV 2694 (S.D.N.Y.).  On April 1, 2016, the United States District Court, Southern District of New York, approved the Parties' Settlement Agreement ("NYCLU Settlement").[5]  The Court wrote:

> Five years after Peoples filed his initial complaint, an historic settlement was reached on behalf of thousands of prisoners, in this class action lawsuit challenging solitary confinement practices across the New York State prison system.  This settlement, which I approve today, will greatly reduce the frequency, duration, and severity of solitary confinement in New York State prisons.  While there is undoubtedly more work to be done, both with respect to solitary confinement and with the conditions of prisons in general, this settlement should end the use and conditions of solitary confinement in New York as they have existed for decades.  It is also my hope that the contours of this Settlement Agreement, and the collaborative process by which it was reached, will serve as a model for other states that are addressing issues of prison reform.
>
> *             *             *
>
> Now that this Settlement Agreement has been finalized and is about to be implemented, enforced, and monitored, the conditions of those currently assigned to solitary confinement — and of those who will be so assigned in the future — will be more humane and more just.

*Peoples*, 180 F. Supp. 3d at 297.

---

[4] *Id.*
[5] Matula Decl., Ex. 1.

The Court described the NYCLU Settlement as addressing three broad categories of reform: (1) reduction in the frequency and duration of SHU sentences; (2) improvements to the conditions of SHU incarceration; and (3) mechanisms for implementation and enforcement of the agreed-upon measures. *See Peoples*, 180 F. Supp. 3d at 301.  The NYCLU Settlement contemplated a "comprehensive overhaul of SHU sentencing and incarceration." *Id.*

The NYCLU Settlement addressed specific infrastructure improvements and programs intended as an alternative to SHU at specifically-identified facilities (*see* NYCLU Settlement, Sections I – VII), but also contained included sections generally applicable to DOCCS SHU confinement (*see* NYCLU Settlement, Sections VIII-XI).  *See* Matula Decl., Ex. 1.  Among other things, the NYCLU Settlement provided for modifications to SHU Conditions (*id.*, Section VIII), Deprivation Orders (Section IX), Sentencing Practices (Section X), and Training (Section XI). The NYCLU Settlement specifically limited the application of deprivations orders (Section IX.A), provided for the modification of sentencing guidelines (Section X.A) and even provided for automatic time cuts in connection with certain sentences of SHU confinement (Section X.D).  The NYCLU Settlement set out sections pertaining to Post-Settlement Activities (Section XII) and Enforcement Powers (Section XIII).

As part of the NYCLU Settlement, the Court ordered annual joint status reports to apprise the Court as to the Parties' efforts to implement and enforce the terms of the NYCLU Settlement and retained jurisdiction to ensure compliance. *See Peoples, et al. v. Annucci*, *et al.*, No. 11 CV 2694 (S.D.N.Y.) at ECF No. 332.  In accordance with the Court's Order, the Parties submitted multiple status reports concerning the significant efforts taken to implement the terms of the NYCLU Settlement. *See Peoples, et al. v. Annucci*, *et al.*, No. 11 CV 2694 (S.D.N.Y.) at ECF Nos. 416, 471, 504.

The Court's docket in *Peoples* demonstrates the Court has continued to receive filings involving enforcement and implementation issues in connection with the NYCLU Settlement. *See generally Peoples, et al. v. Annucci, et al.*, No. 11 CV 2694 (S.D.N.Y.) at ECF Nos. 330 to 523.

**C.    Plaintiffs' Allegations**

With this action, Plaintiffs seek to cast aside all of the significant gains made by the NYCLU Settlement, and to prevent the gains that will be made by the HALT Act.  Plaintiffs instead bring a purported class-action lawsuit that makes three claims: one claim against Governor Hochul; one claim against the State of New York and DOCCS; and one claim against Acting Commissioner Annucci.  At the core of all three of Plaintiffs' claims about the reforms brought about by the HALT Act – particularly the limits imposed on SHU time for incarcerated individuals of up to 15 days at a time – is the assertion that the HALT Act will significantly increase the likelihood that DOCCS security staff members will be assaulted in the future.  In fact, as noted above, Plaintiffs point to statistics developed since the signing of the NYCLU settlement that they say support this notion of the potential for further violence against DOCCS security staff in the future.  For instance, Plaintiffs assert that "despite a 37.2 percent reduction in [the] incarcerated individual population, the number of assaults that occurred inside of New York State prisons doubled." Compl. ¶ 44.

After citing to statistics like this, Plaintiffs assert claims under the theory of the state-created danger doctrine brought pursuant to the substantive due process clause of the Fourteenth Amendment. *Id*., ¶¶ 327, 334, 340.  More specifically, Plaintiffs claim that "[t]he harm to life and limb of Correction Officers and Sergeants that has been and will continue to occur constitutes irreparable harm and shocks the contemporary conscience, as the injuries that have already been sustained under lenient incarcerated individual discipline will only increase after the

implementation of the leniency of HALT, and [this] has gone beyond the pale of the inherent risk of working in a prison setting." *Id.*, ¶ 28. Thus, Plaintiffs essentially allege that, with the HALT Act's enactment, Defendants' supposed "leniency" toward incarcerated people demonstrates "a deliberate indifference to Plaintiffs' right to be free from state-created dangers from third parties …" *Id.*, ¶¶ 327, 340.

## ARGUMENT

### POINT I

**PLAINTIFFS LACK STANDING TO SUE BECAUSE THEIR CLAIM OF *POSSIBLE* FUTURE INJURY FROM THE CRIMES OF THIRD PARTIES IS INSUFFICIENT TO SATISFY ARTICLE III.**

Article III limits this Court's jurisdiction to actual "cases or controversies." U.S. Const. art. III, § 2. One element of this "bedrock requirement" is that plaintiffs "must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). It is thus Plaintiffs' burden, at the pleading stage, to establish standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Although "general factual allegations of injury resulting from the defendant's conduct may suffice," *Lujan*, 504 U.S. at 561, the complaint must still "clearly and specifically set forth facts sufficient to satisfy" Article III. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). "To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm. No concrete harm, no standing." *TransUnion LLC v. Ramirez*, No. 20-297, 2021 U.S. LEXIS 3401, at *7 (U.S. Supreme Court June 25, 2021). And Article III standing must be determined as of the time a plaintiff's complaint was filed. *Fenstermaker v. Obama*, 354 F. App'x 452, 455 n.1 (2d Cir. 2009).

"[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S.

1, 11 (2004).  Constitutional standing requires an "injury-in-fact" that "must be concrete in both a qualitative and temporal sense.  The complainant must allege an injury to himself that is 'distinct and palpable,' as distinguished from merely 'abstract,' and the alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical.'" *Whitmore*, 495 U.S. at 155 (internal citations omitted).

Crucially, allegations of "possible future injury" are not enough to satisfy Article III. *Whitmore*, 495 U.S. at 158; *see also Lujan*, 504 U.S. at 564 n.2 (stating that allegations of a future harm at some indefinite time cannot be an "actual or imminent injury").  Instead, "[a] threatened injury must be 'certainly impending,'" *Whitmore*, 495 U.S. at 158 (internal citation omitted), and "proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Lujan*, 504 U.S. at 564 n.2; *see also Whitmore*, 495 U.S. at 158 (explaining that the imminence requirement "ensures that courts do not entertain suits based on speculative or hypothetical harms").

A plaintiff therefore lacks standing if his "injury" stems from an indefinite risk of future harms inflicted by unknown third parties. *Lujan*, 504 U.S. at 564; *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("we have repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that [a]llegations of possible future injury are not sufficient") (omits internal quotations).  For instance, "courts have regularly held that the risk of future identity theft is too speculative to support Article III standing." *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 301 (2d Cir. 2021) (collecting cases); *see also Feinberg v. Apple, Inc.*, 2016 U.S. Dist. LEXIS 105703, at *7-8 (S.D.N.Y. Aug. 10, 2016) ("mere predictions of harm are insufficient to confer constitutional standing").

The case of *Medina v. City of N.Y.*, 2020 U.S. Dist. LEXIS 222887 (S.D.N.Y. Nov. 30, 2020) is particularly instructive here.  In that case, the district court found that the plaintiff did not have standing to seek prospective injunctive relief because he had failed to plead facts sufficient to establish the imminence of an immediate threat of future injury from recurring, *i.e.*, continued unconstitutional conduct by the police.  Specifically, the plaintiff in *Medina* alleged that a real and immediate threat of future injury existed at the hands of the police in the future because he had been subject to excessive force in the past.  But the district court rejected that claim as being too speculative: "Even accepting the Plaintiff's allegations as true, … the Plaintiff has not pleaded facts sufficient to establish that it is 'no more than conjecture to suggest that in every instance of [an] ... encounter between the police and a citizen, the police will act unconstitutionally and inflict injury without provocation or legal excuse.'"  *Id*. at *16-17 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983)).  The district court continued by stating that plaintiff's argument was "'simply too speculative and conjectural to supply a predicate for prospective injunctive relief.'"  *Id*. at 17 (quoting *Shain v. Ellison*, 356 F.3d 211, 216 (2d Cir. 2004) and citing *Lyons*, 461 U.S. at 111 ("Absent a sufficient likelihood that he will again be wronged in a similar way, [plaintiff] is no more entitled to an injunction than any other citizen …."))  The district court concluded: "[Plaintiff's] subjective fear is insufficient to state a basis for an injunction in the absence of objective criteria indicating that the recurrence of the unlawful conduct is relatively likely to occur. … Thus, Plaintiff's claim of subjective apprehension of future excessive force, absent an immediate threat of injury, does not establish standing for injunctive relief."  *Medina*, 2020 U.S. Dist. LEXIS 222887, at *19.  Once again, the *Medina* district court cited to *Lyons*, quoting the following: "The reasonableness of [plaintiff's] fear is dependent upon the likelihood of a recurrence of the allegedly unlawful conduct.  It is the reality of the threat of repeated injury that

is relevant to the standing inquiry, not the plaintiff's subjective apprehensions.  The emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant." *Lyons*, 461 U.S. at 107 n.8.

Similarly, for purposes of finding standing here, Plaintiffs cannot establish that the implementation of the HALT Act will in fact result in an increase of assaults on DOCCS staff in the future.  Indeed, as noted above, the HALT Act presents a sea change in corrections policy limiting SHU punishment time to only 15 days.  The result of that sea change in policy – along with the significantly expanded remedial programing available to incarcerated people – may well reduce tensions between DOCCS security staff and those who are incarcerated and therefore actually reduce physical assaults on security staff within correctional facilities.  In fact, Governor Cuomo asserted as much upon signing the legislation into law: "The expanded program model enacted by the HALT legislation will better address an individual's underlying criminogenic needs and provide greater rehabilitative impacts to change behavior, leading to positive outcomes for individuals transitioning back to the general population."  Matula Decl., Ex. 4.  Plaintiffs' pure speculation to the contrary is simply that – pure speculation that is insufficient to establish standing for injunctive relief.  *See, e.g., Arpaio v. Obama*, 797 F.3d 11, 22 (D.C. Cir. 2015) ("[T]he reality is that crime is notoriously difficult to predict.  Explaining its causes, even after the fact, is rife with uncertainty.  Crime rates are affected by numerous factors … Even if it were possible to do so, Sheriff Arpaio does not explain how increased migration would interact with those and other factors affecting the crime rate.  On this record, it is pure speculation whether an increase in unlawful immigration would result in an increase, rather than a decrease or no change, in the number of crimes committed in Maricopa County.  Where predictions are so uncertain, we are prohibited from finding standing.").

Additionally, to establish standing to seek injunctive relief, a plaintiff "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *Peck v. Baldwinsville Cent. Sch. Dist.*, 351 F. App'x 477, 479 (2d Cir. 2009) (quoting *Deshawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)); *Laufer v. Laxmi & Sons, LLC*, 2020 WL 6940734, at *9 (N.D.N.Y. Nov. 19, 2020) ("To have standing to seek injunctive relief, Plaintiff has the additional burden of establishing that she 'has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged ... conduct.'") (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)).  The fact that the individual Plaintiffs may have been assaulted by incarcerated people in the past does not mean that they can establish standing for not-yet-occurred assaults on security staff in the future.

Additionally, Plaintiff NYSCOPBA has not demonstrated that it has organizational standing. To establish standing, an organization must show "(1) a distinct and palpable injury in fact to itself as an organization; (2) that is fairly traceable to the challenged action; and (3) that a favorable decision would redress its injuries."  *Rodriguez v. Winski*, 444 F.Supp. 3d 488, 492 (S.D.N.Y. 2020) (citing *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011)).  "It is the responsibility of the complainant to clearly allege facts demonstrating that [one] is a proper party to invoke judicial resolution of the dispute."  *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

To the extent the Complaint alleges an injury at all, it alleges potential injuries only of the individual Plaintiffs, not the union itself.  However, "[f]or an organization to have standing, it is not enough that the defendant allegedly has engaged in a wrong that affects each union member individually and equally.  The organization must suffer some distinctive *injury to itself*."  *Massone v. Washington*, 2021 U.S. Dist. LEXIS 163860, at *9 (S.D.N.Y. Aug. 30, 2021) (emphasis in original).  Because that is not so here, there is no organizational standing.

Even if an organization does not have standing on its own right and has not alleged that it suffered any injury, it can still assert representative standing on behalf of its members by showing that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Bano v. Union Carbide Corp.*, 361 F.3d 696, 713 (2d Cir. 2004) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). For the reasons already discussed above, however, the union lacks standing because it cannot meet the first prong stated above, since it must establish that "at least one identified member ha[s] suffered or would suffer harm." *New York v. United States DOC*, 351 F. Supp. 3d 502, 606 n.48 (S.D.N.Y. 2019).

For all of these reasons, Plaintiffs lack standing here, and the Complaint should be dismissed.

## POINT II

### THE POLITICAL QUESTION DOCTRINE DEPRIVES THIS COURT OF JURISDICTION TO ALTER WHAT THE N.Y.S. LEGISLATURE HAS DETERMINED IS THE CORRECT MAXIMUM SENTENCE FOR SHU IN THE CORRECTIONAL FACILITIES WITHIN DOCCS.

The political question doctrine is a product of the constitutional separation of powers, and bars the courts from reviewing the substance of policy decisions that the Constitution commits to the discretion of the legislative or executive branches of government. *See Baker v. Carr*, 369 U.S. 186, 211 (1962) ("[I]t is the relationship between the judiciary and the coordinate branches of the Federal Government, ... which gives rise to the 'political question' [doctrine]."); *Totes-Isotoner Corp. v. United States*, 594 F.3d 1346, 1352 (Fed. Cir. 2010) ("The political question doctrine excludes certain disputes from judicial determination where the subject matter of the dispute is exclusively assigned to the political branches or where such branches are better-suited than the

judicial branch to resolve the matter.").

The doctrine is one of justiciability, which recognizes that "[t]he Judiciary is particularly ill suited to make such decisions, as 'courts are fundamentally underequipped to formulate national policies or develop standards for matters not legal in nature.'" *Japan Whaling Ass'n. v. American Cetacean Soc.*, 478 U.S. 221, 230 (1986) (citations omitted). Thus, the justiciability of Plaintiffs' claims here concerns the Court's subject matter jurisdiction. *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 215-16 (1974).

In *Baker v. Carr*, the Supreme Court identified six criteria to be considered in determining whether a case presents a non-justiciable political question:

> Prominent on the surface of any case held to involve a political question is found [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question

369 U.S. at 217. Importantly, satisfaction of any one of these factors is enough to preclude judicial review. *Id*.; *see also Samish Indian Nation v. United States*, 419 F.3d 1355, 1372 (Fed. Cir. 2005) ("Under the political question doctrine any one criterion is both necessary and sufficient.").

The political question doctrine thus excludes from judicial review those controversies which revolve around "policy choices and value determinations" constitutionally committed for resolution to the halls of Congress or state legislatures or to the confines of the Executive Branch. *Japan Whaling Ass'n*, 478 U.S. at 230. Again, the Judiciary is particularly ill suited to make such policy choices and value determinations, as "courts are fundamentally underequipped to formulate national policies or develop standards for matters not legal in nature." *United States ex rel. Joseph*

*v. Cannon*, 206 U. S. App. D. C. 405, 411, 642 F.2d 1373, 1379 (1981) (footnote omitted), *cert. denied*, 455 U.S. 999 (1982).

Reduced to its nub, Plaintiffs challenge the power of the N.Y.S. Legislature to ultimately determine the maximum length of sentences that incarcerated people may serve in SHU in the correctional facilities that are under the Legislature's charge.  That is precisely the function of a state legislature: "defining crimes and fixing penalties are legislative, not judicial, functions." *United States v. Evans*, 333 U.S. 483, 486 (1948) (footnote omitted); *see also United States v. Wheeler*, 886 F.3d 415, 430 (4th Cir. 2018) (same); *United States v. Stanley*, 928 F.2d 575, 581 (2d Cir. 1991) ("fixing penalties for statutory violations is a matter for legislative judgment, and the legislature may require … fixed mandatory sentences"); *Mistretta v. United States*, 488 U.S. 361, 364 (1989) ("Congress, of course, has the power to fix the sentence for a federal crime, *United States v. Wiltberger*, 5 Wheat. 76 (1820), and the scope of judicial discretion with respect to a sentence is subject to congressional control.  *Ex parte United States*, 242 U.S. 27 (1916)"); *United States v. White*, 869 F.2d 822, 825 (5th Cir. 1989) ("Congress has the power to completely divest the courts of their sentencing discretion and to establish an exact, mandatory sentence for all offenses.").

Because fixing the outer limits on the ultimate maximum sentence for SHU is within the exclusive province of the N.Y.S. Legislature, and not this Court, this Court should conclude that this case presents a political question, and that the Court therefore lacks jurisdiction to hear the issues presented.

### POINT III

**PLAINTIFFS' CLAIM AGAINST NEW YORK STATE AND DOCCS MUST BE DISMISSED BECAUSE IT IS BARRED BY THE ELEVENTH AMENDMENT.**

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Further, the Eleventh Amendment "has, of course, been interpreted to extend beyond the terms of its text to bar suits in federal courts against states, by their own citizens or by foreign sovereigns . . . ." *W. Mohegan Tribe & Nation v. Orange Cty.*, 395 F.3d 18, 20 (2d Cir. 2004). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). "New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983." *Billips v. DOCCS*, 2017 U.S. Dist. LEXIS 199277, at *6 (S.D.N.Y. Nov. 28, 2017). Additionally, "[a] state's immunity extends to state agencies such as DOCCS, which is an arm of the State of New York." *Id*.

Plaintiffs' claims brought pursuant to 42 U.S.C. § 1983 against New York State and DOCCS in the Second Claim are thus barred by Eleventh Amendment immunity. The fact that Plaintiff seeks injunctive relief under § 1983 against Defendants does not change this conclusion. Claims for injunctive relief under § 1983 cannot be brought directly against the state or a state agency, but only against state officials in their official capacities. *Santiago v. New York State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991). Accordingly, to the extent that Plaintiffs seek to bring suit against New York State and DOCCS in their Second Claim, that claim fails since

17

these entities enjoy Eleventh Amendment immunity from suits brought under § 1983.[6]

## POINT IV

**PLAINTIFFS' STATE-CREATED DANGER DOCTRINE CLAIMS FAIL AS A MATTER OF LAW BECAUSE SUCH CLAIMS ARE NOT COGNIZABLE UNDER U.S. SUPREME COURT PRECEDENT, AND BECAUSE PLAINTIFFS CANNOT ESTABLISH THE NECESSARY CONSCIENCE-SHOCKING BEHAVIOR ON THE PART OF THE DEFENDANTS.**

In challenging the implementation of the HALT Act, Plaintiffs bring a substantive due process claim under the state-created danger doctrine, which is an exception to the general rule that prohibits such claims based upon a state's failure to protect. *See Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 419 (2d Cir. 2009); *Dwares v. City of New York*, 985 F.2d 94, 99 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant Cty. Narcotics Intel. & Coord. Unit*, 507 U.S. 163, 164 (1993). This doctrine subjects state actors to liability under 42 U.S.C. § 1983 only if the state actors "affirmatively created or enhanced the danger of private violence." *Okin*, 577 F.3d at 428 (citing *Dwares*, 985 F.2d 94 at 99).

Plaintiffs' substantive due process claims based on the assertion that Plaintiffs are being subjected to state-created dangers lack merit and should be dismissed. Indeed, Plaintiffs' entire premise that they can state a claim based on allegations that Defendants violated their substantive

---

[6] With regard to Plaintiffs' Third Claim against Acting Commissioner Annucci in his official capacity only, "[u]nder the well-known exception to this rule first set forth in *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908) [] a plaintiff may sue a state official acting in his official capacity – notwithstanding the Eleventh Amendment – for prospective, injunctive relief from [alleged] violations of federal law." *Rowland*, 494 F.3d at 95 (internal quotation marks omitted). Plaintiffs have alleged so here with regard to Acting Commissioner Annucci. *See* Compl. ¶ 13. However, "the exception is narrow: It applies only to prospective relief, [and] does not permit judgments against state officers declaring that they violated federal law in the past. . . ." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Thus, "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quotations, brackets, and citation omitted). For the reasons cited in Point IV below, however, Plaintiffs have not stated – and cannot possibly state – any "ongoing violation of federal law," therefore the *Ex parte Young* doctrine is inapplicable here, and the Third Claim against Acting Commissioner Annucci must also be dismissed.

due process right to a "safe working environment" is constitutionally flawed.  That theory of constitutional liability has already been explicitly rejected by the Supreme Court, and numerous other courts.  *See Collins v. Harker Heights*, 503 U.S. 115, 125–29 (1992) (rejecting as "unprecedented" the claim that the Due Process Clause "guarantee[d] municipal employees a workplace that is free of unreasonable risks of harm"); *see also Cruz v. N.Y. City Hous. Auth.*, 2004 WL 1970143, at *8 (S.D.N.Y. Sept. 3, 2004) (quoting *White v. Lemacks*, 183 F.3d 1253, 1257 (11th Cir. 1999) ("consensual employment agreements do 'not entitle the employee to constitutional protection from workplace hazards' even if the government employee 'risk[s] losing her job if she did not submit to unsafe job conditions.'"); *Robischung-Walsh v. Nassau County Police Dep't*, 421 Fed. App'x. 38, 40 (2d Cir. 2011) ("[s]ubstantive due process does not support constitutional liability for claims based solely on a governmental entity's alleged failure 'to provide its employees with a safe working environment'") (quoting *Collins*, 503 U.S. at 126); *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 430 (3d Cir. 2006) ("a failure to devote sufficient resources to establish a safe working environment does not violate the Due Process Clause"); *Walker v. Rowe*, 791 F.2d 507, 510-11 (7th Cir. 1986) ("We therefore hold that the due process clause does not assure safe working conditions for public employees.").

Plaintiffs' allegations that Defendants exhibited a deliberate indifference to Plaintiffs' safety do not save their substantive due process claims from dismissal.  To be sure, the Supreme Court has held that the government's deliberate indifference to the care of persons in its custody can shock the conscience for purposes of finding a substantive due process violation (*see Lewis v. County of Sacramento*, 523 U.S. 833, 845 (1998)), but the *Collins* Court made it clear that this standard does not apply to persons in an employment relationship with the government: "Petitioner cannot maintain . . . that the city deprived Collins of his liberty when it made, and he voluntarily

accepted, an offer of employment." *Collins*, 503 U.S. at 849-50.

Also, mindful of the Supreme Court's admonition not to permit the due process clause to "'transform every tort committed by a state actor into a constitutional violation,'" courts have imposed liability for a state-created danger "with considerable stringency." *Benzman v. Whitman*, 523 F.3d 119, 127 (2d Cir. 2008) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 190 (1989)). As a result, even where government action causes bodily harm to a plaintiff, there is no "substantive due process violation unless 'the government action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007) (quoting *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005)). "In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offensive to human dignity." *Id*. at 81 (internal quotation marks and citations omitted).

Yet, as this Court has held in another case, the conscience-shocking element of this claim cannot be met here because:

> "[c]ourts should operate from a 'presumption that the administration of government programs is based on a rational decisionmaking process that takes account of competing social, political, and economic forces.'" *Lombardi*, 485 F.3d at 84 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 128, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992)). The presence of significant countervailing obligations will preclude official actions from shocking the conscience.

*Barber v. Rome Hous. Auth*., No. 6:16-cv-1529 (MAD/TWD), 2018 U.S. Dist. LEXIS 54211, at *16-17 (N.D.N.Y. Mar. 30, 2018) (D'Agostino, J.). The HALT Act, passed by the New York State Legislature after consideration and deliberation, was based on precisely these types of competing social, political, and economic considerations, which prevents a conscience-shocking finding.

20

The case of *Corr. Officers' Benevolent Ass'n v. City of N.Y.*, 2018 U.S. Dist. LEXIS 90457 (S.D.N.Y. May 30, 2018), is instructive.  In that case, the union that represented correction officers in the New York City Department of Corrections ("DOC") brought an action against New York City, Mayor Bill DeBlasio, DOC, and the Commissioner of the DOC.  The claims in that case mirror the claims brought in this case.  More specifically, the plaintiffs in that case alleged substantive due process claims under the state-created danger doctrine asserting that newly-adopted policies of the DOC "increased the COs' exposure to physical danger or even death."  *Id*. at 4, 10.  The policies challenged by the union included, among other things, (1) "[t]he discontinuation of the use of punitive segregation … for young inmates in favor of alternative programs with no punitive element", and (2) "limiting the use of punitive segregation among the adult inmate population in favor of an increased reliance on non-punitive programs and failing to use punitive segregation even to the extent authorized by this reformed policy."  *Id*. at 4.  Plaintiffs in that case alleged that, as a result of these policies, violence in the City jails increased up to 18 percent, and injuries to DOC staff increased substantially in the period between November 2015 and December 2016.  *Id*. at *6.

But the court rejected the union's claim, stating the following: "Here, Plaintiffs allege that Defendants prioritized the safety of DOC's inmates over that of the COs and violated Plaintiffs' right to substantive due process through deliberate indifference to the implications CO safety of their policy changes.  Although the COs perform vital work in an inherently dangerous environment, this attention to the safety of DOC's inmates, who themselves enjoy a special relationship with the City entitling them to protection pursuant to the Due Process Clause, is exactly the type of competing obligation that makes liability based on the deliberate indifference standard inappropriate."  *Id*. at *14-15.  The court went on to state: "The parties have not cited,

21

and the Court's research has not disclosed, any precedent in which another court has held the deliberate indifference standard sufficient to support a substantive due process claim where a valid and articulated competing government obligation was a factor in the challenged conduct." *Id*. at *16-17. Based upon this analysis, the court granted the City defendants' F.R.C.P. Rule 12(b)(6) motion to dismiss. The same should result here because reducing the maximum time allowed for incarcerated people to be held in SHU confinement certainly is a competing benefit, which can be and was rationally balanced by the N.Y.S. Legislature as a competing social, political, and economic interest to that of the Plaintiffs' interests in this case. As such, the conscience-shocking element of Plaintiffs' substantive due process claim simply cannot be met here.

Finally, in the context of a substantive due process claim, "the concept of assumption of risk is relevant in the public employee cases where the employee was hired to perform an inherently dangerous job." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ*., 542 F.3d 529, 538 (6th Cir. 2008); *see Speakman v. Williams*, 841 F. App'x 382 (3d Cir. 2021) ("We agree with the District Court that the risk of injury or death is inherent to a firefighter's job and that any increase in risk on account of either the 'rolling bypass' policy, the alleged understaffing, or any other alleged misconduct on the part of Defendants did not alter the fundamental nature of this inherent risk."); *Estate of Phillips v. D.C.*, 455 F.3d 397, 407, 372 U.S. App. D.C. 312 (D.C. Cir. 2006) ("[The Fire Chief's] deliberate indifference may have increased the Firefighters' exposure to risk, but the risk itself – injury or death suffered in a fire – is inherent in their profession."). The jobs of DOCCS' Correction Officers and Sergeants involve inherent danger because "'[p]risons are inherently dangerous institutions,' where prison guards are greatly outnumbered by inmates – many of whom have a history of violence or of aggressive tendencies." *United States v. Johnson*, 616 F.3d 85, 94 (2d Cir. 2010) (quoting *Lewis v. Casey*, 518 U.S. 343, 391 (1996)). Indeed, as

Judge Frank H. Easterbrook of the Seventh Circuit aptly stated in *Walker v. Rowe*, 791 F.2d 507, in the context of prisons, "[t]he constitution no more assures a safe job than it does a job with a generous salary":

> Would-be guards must decide whether to take the job – with a given mix of salary, safety, and compensation for injury – or to seek work elsewhere. The state may not dragoon people to be guards. Would-be guards, represented by their labor unions, may decide to accept a little less safety in exchange for a little higher pay. … Having decided that the combination of pay, benefits, and safety is satisfactory, the guards cannot turn around and say that the constitution required that safety be a larger component of the total package. The constitution no more assures a safe job than it does a job with a generous salary.

*Walker v. Rowe*, 791 F.2d at 510.

Based upon the analysis of the case law cited above, the Court should dismiss the present case in its entirety for failure to state a claim.

## POINT V

**THIS COURT SHOULD NOT REVIEW, MODIFY, OR INVALIDATE THE COURT-APPROVED NYCLU SETTLEMENT ENTERED IN THE SOUTHERN DISTRICT OF NEW YORK.**

Plaintiffs also seek to have this Court order, among other things, that "Defendants immediately cease violation of Plaintiffs rights by enjoining Defendants from enforcement policies, procedures and/or customs limiting the use of segregated confinement pursuant to the NYCLU settlement [in the Southern District of New York] and the regulations adopted by Defendants therefrom." Compl, Wherefore (e). However, this Court should not review, modify, or invalidate a "so ordered" stipulation of a Southern District of New York court:

> One district court should not review the decision of another district court. *See, e.g. Green v. Citigroup*, Inc. 68 Fed. Appx. 934, 936 (10th Cir. 2003) ("It is axiomatic that one district court has no jurisdiction to review the decision of another district court."). In *Celotex Corporation v. Edwards*, 514 U.S. 300, 313, 131 L. Ed. 2d 403, 115 S. Ct. 1493 (1995), quoting *Walker v. Birmingham*, 388 U.S. 307, 314, 18 L. Ed. 2d 1210, 87 S. Ct. 1824 (1967), quoting *Howat v. Kansas*, 258 U.S. 181, 189-190, 66 L. Ed. 550, 42 S. Ct. 277 (1922), the Supreme Court explained, "'it is

> for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected.'"

*Harper v. Trans Union, LLC.*, 2005 U.S. Dist. LEXIS 4721, at *5-7 (E.D. Pa. Mar. 24, 2005).

Thus, because "[t]he law does not allow a party to file a 'horizontal appeal' from one district judge

to another judge of the same rank …", *McGinley v. Houston*, 2003 U.S. Dist. LEXIS 14947, at *2

(S.D. Ala. Aug. 27, 2003), this particular claim regarding the NYCLU settlement in the Southern

District of New York must be dismissed.  *See In re. Persico*, 362 F. Supp. 713, 714 (E.D.N.Y.

1973) ("Judges of coordinate jurisdiction do not, except in the most extraordinary situations, have

the function of reviewing each other's orders."); *United States v. American Radiator & Standard*

*Sanitary Corp*., 388 F.2d 201, 203-04 (3rd Cir. 1967) (noting that within a single circuit, there is

rarely need or justification for one district court to interfere with litigation in another district court);

*De Maurez v. Swope*, 110 F.2d 564, 565 (9th Cir. 1940) (commenting that it is "highly indiscreet

and injudicious for one judge of equal rank and power to review identical matters passed upon by

his [or her] colleague").

For all of these reasons, Plaintiffs' claim involving the NYCLU Settlement in the Southern

District of New York must be dismissed for lack of jurisdiction.

## **CONCLUSION**

For the foregoing reasons, this Court should grant Defendant's motion to dismiss this

action with prejudice pursuant to F.R.C.P. Rule 12(b)(1) and F.R.C.P Rule 12(b)(6).

Dated: Albany, New York
      September 20, 2021

                       LETITIA JAMES
                       Attorney General
                       State of New York
                       *Attorney for the Defendants*
                       The Capitol
                       Albany, New York 12224

                       By: *Brian W. Matula*
                       Brian W. Matula, Of Counsel
                       Assistant Attorney General
                       Bar Roll No. 511717
                       Tel.: 518-776-2599
                       Brian.Matula@ag.ny.gov

                       By: *Michael McCartin*
                       Michael G. McCartin, Of Counsel
                       Assistant Attorney General | Special Counsel
                       Bar Roll No. 511158
                       Tel.: (518) 776-2620
                       Michael.McCartin@ag.ny.gov

TO:  Ms. Emily G. Hannigan, Esq.
       Mr. Gregory T. Myers, Esq.