**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**NEW YORK STATE CORRECTIONAL OFFICERS**
**AND POLICE BENEVOLENT ASSOCATION, INC.;**
**THOMAS HANNAH**, *individually and on the behalf of*
*all others similarly situated*; **CHOLE HAYES**, *individually*
*and on the behalf of all others similarly situated*; **ERIK**
**MESUNAS**, *individually and on the behalf of all others*
*similarly situated*; **KERRI MONTGOMERY**, *individually*
*and on the behalf of all others similarly situated*; **SARAH**
**TOMPKINS**, *individually and on the behalf of all others*
*similarly situated*; **ALEXANDER VOITSEKHOVSKI**,
*individually and on the behalf of all others similarly*
*situated*; **JOHN AND JANE DOES 1-18,000,**

                                **Plaintiffs,**

    **vs.**                                            **1:21-cv-535**
                                                       **(MAD/CFH)**

**KATHY HOCHUL**, *in her official capacity as Governor*
*of New York*; **STATE OF NEW YORK; NEW YORK**
**STATE DEPARTMENT OF CORRECTIONS AND**
**COMMUNITY SUPERVISION; ANTHONY ANNUCCI**,
*in his official capacity as Acting Commissioner of the*
*New York State Department of Corrections and Community*
*Supervision*,

                                **Defendants.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**LIPPES MATHIAS LLP –**                **EMILY GRACE HANNIGAN, ESQ.**
**ALBANY OFFICE**                       **GREGORY TAYLOR MYERS, ESQ.**
54 State Street, Suite 1001
Albany, New York 12207
Attorneys for Plaintiffs

**OFFICE OF ATTORNEY**                  **MICHAEL G. McCARTIN, AAG**
**GENERAL – ALBANY**                    **BRIAN W. MATULA, AAG**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

1

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiffs, the New York State Correctional Officer and Police Benevolent Association and six individual correction officers, commenced this putative class action on May 7, 2021, asserting violations of their Fourteenth Amendment rights. *See* Dkt. No. 1. Plaintiffs allege that changes in policies and practices related to solitary confinement in New York prisons violate their due process right to be free from state-created danger. *Id.* at ¶ 24. Currently before the Court is Defendants' motion to dismiss. *See* Dkt. No. 15. For the following reasons, Defendants' motion is granted.

**II. BACKGROUND**

A settlement agreement between the New York State Department of Corrections and Community Supervision ("DOCCS") and the New York Civil Liberties Union was approved on April 1, 2016 ("NYCLU Settlement"). *See Peoples v. Annucci*, 180 F. Supp. 3d 294 (S.D.N.Y. 2016). In *Peoples*, the plaintiffs had challenged the constitutionality of solitary confinement in New York State prisons. *See id.* In approving the NYCLU Settlement, the court stated:

> Five years after Peoples filed his initial complaint, an historic settlement was reached on behalf of thousands of prisoners, in this class action lawsuit challenging solitary confinement practices across the New York State prison system. This settlement, which I approve today, will greatly reduce the frequency, duration, and severity of solitary confinement in New York State prisons.

*Id.* at 297.

The NYCLU Settlement "provides for three broad categories of reform: (1) reduction in the frequency and duration of SHU[1] sentences; (2) improvements to the conditions of SHU

---

[1] Individuals given a disciplinary confinement sanction are placed in a special housing unit ("SHU").

2

incarceration; and (3) mechanisms for implementation and enforcement of the agreed-upon measures." *Id.* at 301.  The NYCLU Settlement also includes a mechanism for implementing and enforcing the changes over a five-year period.  *See* Dkt. No. 1 at ¶ 53.

Continuing New York's solitary confinement reform, on March 31, 2021, the Humane Alternatives to Long-Term Solitary Confinement Act ("HALT") was signed into law by then-Governor Andrew Cuomo.  *Id.* at ¶ 22.  The HALT Act limits segregated confinement[2] to fifteen consecutive days and twenty days within any sixty-day period.  N.Y. Correct. Law § 137(6)(i).  It also bans segregated confinement for individuals who are twenty-one years or younger or fifty-five years or older; with a physical, mental, or medical disability; or who are pregnant, in the first eight weeks of post-partum recovery period, or caring for a child while in a correctional institution.  *Id.* at §§ 2(33), (6)(h).  For individuals who cannot enter segregated confinement, the HALT Act creates Residential Rehabilitation Units ("RRUs"), which are "therapeutic and trauma-informed, and aim to address individual treatment and rehabilitation needs and underlying causes of problematic behaviors."  *Id.* at § 2(34).  Pursuant to the HALT Act, individuals in segregated confinement receive four hours of out of cell programming, including one hour for recreation, and individuals in RRUs receive at least six hours of out of cell programming with an additional hour for recreation.  *Id.* at § 137(6)(j)(ii).  The HALT Act has an effective date of March 31, 2022.  *Id.*

Since the NYCLU Settlement was approved in 2016, segregated or solitary confinement has been eliminated for over forty disciplinary infractions, the average length shortened by thirty-one percent, and the number of individuals in SHUs decreased by nearly fifty-eight percent.  *See* Dkt. No. 1-4; Dkt. No. 1-5.  Plaintiffs allege that, beginning in 2012, there has been a 99.8 percent

---

[2] The HALT Act defines "segregated confinement" as, "confinement of an incarcerated individual in any form of cell confinement for more than seventeen hours a day other than in a facility-wide

increase in violence perpetuated by incarcerated individuals against staff and an 84.6 percent increase in violence perpetuated by incarcerated individuals against other incarcerated individuals.  Dkt. No. 1 at ¶ 95.  Over this same time period, the number of incarcerated individuals decreased by 36.4 percent.  *Id.* at ¶ 19.

Plaintiffs allege that changes to solitary confinement from the NYCLU Settlement and HALT Act "create a dangerous living and working environment by permitting those incarcerated individuals who have shown a propensity to violently assault peaceful incarcerated individuals and/or State employees to be placed in congregate settings where they are easily able to repeat such violent acts." *Id.* at ¶ 18.  Plaintiffs further allege that the changes to solitary confinement "have increased workplace danger beyond what is custom in Plaintiffs' profession and resulted in serious, permanent injuries to Plaintiffs, their fellow employees, and other incarcerated individuals."  Dkt. No. 18 at 11.  This, Plaintiffs allege, violates their Fourteenth Amendment right to be free from state-created danger.  *See* Dkt. No. 1 at ¶¶ 24-25.  Defendants move to dismiss the complaint for a lack of subject matter jurisdiction and for a failure to state a claim upon which relief can be granted.  *See* Dkt. No. 15.

### III. DISCUSSION

**A.     Standard of Review**

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Dutrow v. New York State Gaming Commission*, No. 13-cv-996, 2014 WL 11370355, *3 (E.D.N.Y. July 29, 2014), *aff'd*, 607 Fed. Appx. 56 (2d Cir. 2015).  "[A] federal court generally may not rule on the merits of a

---

emergency or for the purpose of providing medical or mental health treatment."  N.Y. Correct. Law § 2(23). !

case without first determining that it has jurisdiction over the category of claim in suit ([i.e.,] subject-matter jurisdiction)." *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citation omitted).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

When subject matter jurisdiction is challenged, a plaintiff "bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'" *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quoting *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003)). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citing *Makarova*, 201 F.3d at 113).

In reviewing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [ ] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.*  In resolving a Rule 12(b)(1) motion, a court may also "consider 'matters of which judicial notice may be taken.'" *Greenblatt v. Gluck*, No. 03 Civ. 597, 2003 WL 1344953, *1 n.1 (S.D.N.Y. Mar. 19, 2003) (quoting *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1992)).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted).  In considering the legal

sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558 or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

**B.      Standing: Injury in Fact**

Article III of the Constitution limits federal courts' jurisdiction to "cases" and "controversies."  U.S. Const. Art. III, § 2.  "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'"  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  The Supreme Court has "established that the 'irreducible constitutional minimum' of standing consists of three elements."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan*, 504 U.S. at 560).  "The plaintiff must have [i] suffered an injury in fact, [ii] that is fairly traceable to the challenged conduct of the defendant, and [iii] that is likely to be redressed by a favorable judicial decision."  *Id.*

To establish an "injury in fact," a plaintiff must show that he or she suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical."'"  *Lujan*, 504 U.S. at 560 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).  For an "injury in fact" to be "actual or imminent," a plaintiff must allege a non-speculative injury.  *See Lujan*, 504 U.S. at 583–84.  An allegation of future injury may establish standing only "if the threatened injury is 'certainly impending,' or there is a '"substantial risk" that the harm will occur.'"  *Susan B. Anthony List*, 573 U.S. at 158 (quoting *Clapper v. Amnesty International USA*, 568 U.S. 398, 414 n.5 (2013)).  Where, as here, a plaintiff seeks injunctive or declaratory relief, they "must carry the burden of establishing that '[they have] sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'"  *Shain*, 356 F.3d at 215 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)).  In other words, "an allegation of future injury will be sufficient only if 'the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'"  *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021) (quoting *Susan B. Anthony List*,

573 U.S. at 158).  In making this showing, a plaintiff "'cannot rely on past injury to satisfy the injury requirement but must show a likelihood that [they] will be injured in the future.'"  *Id.* (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)).

Plaintiffs allege that they have suffered harm because of the implementation of the NYCLU Settlement and a likelihood of future harm due to the passage of the HALT Act.  The Court construes Defendants' motion to dismiss for lack of injury in fact to only apply to Plaintiffs' claims regarding the HALT Act, as the NYCLU Settlement has already been implemented.[3] Plaintiffs argue that, because of the HALT Act, there is "a risk of imminent harm to correction officers and correction sergeants" because they will be unable to "separate the dangerous incarcerated individuals from staff and the law-abiding incarcerated individual population."  Dkt. No. 18 at 14.  Violence in New York prisons has increased since 2016, as the NYCLU Settlement was implemented, and the HALT Act will ensure this trend continues, Plaintiffs argue.  *Id.* Plaintiffs assert that statistical evidence of an increasing risk of harm, coupled with state action that will magnify the risk of that same harm occurring in the future, was held to establish an injury in fact in *Massachusetts v. EPA*, 549 U.S. 497 (2007).

Plaintiffs' reliance on *Massachusetts v. EPA*, however, is misplaced.  There, the Supreme Court held that the Commonwealth of Massachusetts had standing to challenge the Environmental Protection Agency's denial of a petition for rulemaking.  Massachusetts filed a petition for rulemaking seeking the EPA regulate greenhouse gasses because the Clean Air Act stated, "[t]he [EPA] Administrator *shall* by regulation prescribe … standards applicable to the emission of any

---

[3] Plaintiffs initiated the instant action on May 7, 2021 and the HALT Act has an effective date of March 31, 2022.  Although this Memorandum-Decision and Order is issued after the effective date of the HALT Act, "'standing is to be determined as of the commencement of suit.'" *Fenstermaker v. Obama*, 354 Fed. Appx. 452, 455 n.1 (2d Cir. 2009) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n.5 (1992)).

air pollutant … which may reasonably be anticipated to endanger public health or welfare …." 42 U.S.C. § 7521(a)(1) (emphasis added). After the EPA denied its petition for rulemaking, Massachusetts filed a lawsuit pursuant to 42 U.S.C. § 7607(b)(1), which explicitly provides for judicial review of actions of the EPA Administrator taken under § 7521(a)(1) of the Clean Air Act.

The EPA argued that the Commonwealth of Massachusetts had not suffered an injury in fact because the harm from greenhouse gases was speculative. The Court disagreed, holding that the "EPA's steadfast refusal to regulate greenhouse gas emissions presents a risk of harm to Massachusetts that is both 'actual' and 'imminent.'" *Massachusetts*, 549 U.S. at 521. The Court found that the judicial review provided for under § 7607(b)(1) created a "procedural right" which can be asserted "without meeting all the normal standards for redressability and immediacy." *Id.* at 517-18. "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.* at 516 (quoting *Lujan*, 504 U.S. at 580). Moreover, the Court heavily weighed the fact that Massachusetts was protecting its "sovereign prerogatives" to regulate and protect its citizens from greenhouse gases, which it had surrendered to the federal government. *Id.* at 519. The Court concluded, "[g]iven that procedural right and Massachusetts' stake in protecting its quasi-sovereign interests, the Commonwealth is entitled to special solicitude in our standing analysis." *Id.* at 520.

None of the factors which entitled Massachusetts to "special solicitude" are present in the current case. Plaintiffs are not vindicating a procedural right; they are bringing a cause of action under 42 U.S.C. § 1983 to attempt to a vindicate substantive right. *See, e.g., Juliana v. United States*, 947 F.3d 1159, 1171 (9th Cir. 2020) (rejecting a standing argument asserted under

*Massachusetts v. EPA* because the plaintiffs "do not assert a procedural right, but rather a substantive due process claim"). And Plaintiffs, of course, are not sovereign entities.

Instead, more illustrative is the line of cases which holds that the risk a third party will break the law to cause an injury at some future unspecified date in an unspecified manor is too speculative to create an injury in fact. In *Lyons*, 461 U.S. 95, the seminal case on prospective harm, the Supreme Court held that the plaintiff, who alleged a police officer had placed him in an illegal chokehold, did not have standing to seek an injunction or declaratory relief to prevent police officers from using such chokeholds because he did not allege facts showing "a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part." *Id.* at 105. The Supreme Court held that the risk that the plaintiff would encounter the police and suffer a subsequent unlawful chokehold was speculative in nature and insufficient to confer equitable standing. *Id.* at 109. Rather, for injunctive relief, "Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter, ... or, (2) that the City ordered or authorized police officers to act in such manner." *Id.* at 105–06; *see also O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) (holding that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects").

Similarly, in *Medina v. City of New York*, No. 19-CV-9412, 2020 WL 7028688 (S.D.N.Y. Nov. 30, 2020), the court found that the plaintiff did not have standing to pursue prospective injunctive relief against police misconduct. There, the plaintiff alleged that there was a "real and

immediate threat of future injury" because he would continue to engage in the lawful conduct that had brought him in contact with the New York Police Department. *Id.* at *5. But the court held that, "the [p]laintiff has not pleaded facts sufficient to establish that it is 'no more than conjecture to suggest that in every instance of [an] ... encounter between the police and a citizen, the police will act unconstitutionally and inflict injury without provocation or legal excuse.'" *Id.* (quoting *Lyons*, 461 U.S. at 108); *see also Vasquez v. Whitney*, No. 9:16CV0623, 2018 WL 4702063, *4 (N.D.N.Y. Sept. 28, 2018) ("Here, Plaintiff's belief that he will likely suffer harm in the future—in the form of treatment and/or association with OMH, DOH, and DOCCS—is purely speculative. Allegations of future injury without more do not establish a real threat of injury").

In *Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015), the court likewise did not find standing for prospective injunctive relief. Directly apposite to the case at hand, the court in *Arpaio* found that a relationship between a policy change and "anticipated action of unrelated third parties makes it considerably harder to show the causation required to support standing." *Id.* at 20. "The injuries Sheriff Arpaio predicts would stem not from the government's DACA or DAPA programs, but from future unlawful entrants committing crimes in Maricopa County after their arrival." *Id.* Ultimately, the court held Arpaio's claim was too speculative because even if the challenged policies did increase unlawful immigration, and even though "[t]here is simple appeal to the notion that, all else being equal, more people will commit more crime … the reality is that crime is notoriously difficult to predict." *Id.* at 22. The court concluded, "[o]n this record, it is pure speculation whether an increase in unlawful immigration would result in an increase, rather than a decrease or no change, in the number of crimes committed in Maricopa County. Where predictions are so uncertain, we are prohibited from finding standing." *Id.*

Here, Plaintiffs allege that a policy change will result in increased violence by third parties. Specifically, Plaintiffs allege that the limitations on the use of solitary confinement imposed by the HALT Act will lead to an increased level of violence by inmates. As evidence, Plaintiffs rely on statistics showing an increase in inmate violence from 2012 to 2020, even alongside a precipitous drop in inmate population. *See* Dkt. No. 1 at ¶¶ 39-44. Plaintiffs further allege that this is attributable to solitary confinement reforms imposed by the NYCLU Settlement, and therefore that a fair inference exists that the reforms from the HALT Act will further increase inmate violence.

The Court disagrees. The allegation that the HALT Act will lead to an overall higher level of violence in New York prisons is too speculative. Plaintiffs claim that the overall level of violence in New York prisons will rise above a certain unconstitutional threshold, "[b]ut the reality is that crime is notoriously difficult to predict." *Arpaio*, 797 F.3d at 22. The impact on the overall level of violence in New York prisons because of solitary confinement reform simply cannot be predicted by this Court. "Crime rates are affected by numerous factors." *Id.* Violence in New York prisons could decrease or stay the same because of the HALT Act. Plaintiffs' assertion that, following the implementation of the HALT Act, violence in New York prisons will increase is no more than conjecture.

Plaintiffs' statistical allegations do not change the Court's conclusion. Plaintiffs rely solely on a study showing an increase in inmate violence beginning in 2012. But the NYCLU Settlement did not go into effect until 2016. An upward trend beginning in 2012, when changes to solitary confinement practices did not begin until 2016, offers little persuasive value. Moreover, it is difficult for the Court to assume that the increase in violence in New York prisons is attributable to any one factor. "Crime rates are affected by numerous factors, such as the local

economy, population density, access to jobs, education, and housing, and public policies that directly and indirectly affect the crime rate." *Arpaio*, 797 F.3d at 22.  It is particularly difficult for the Court to attribute the increase in violence solely to solitary confinement reform where Plaintiffs have not provided a comparison to a jurisdiction in which solitary confinement reform was not enacted.  "Deciding whether a statistical disparity is caused by a particular factor requires controlling for other potentially relevant variables; otherwise, the difference could be explained by other influences." *Flowers v. Mississippi*, 139 S. Ct. 2228 (2019) (Thomas, J., dissenting).

Accordingly, Plaintiffs do not have standing to challenge the HALT Act.  The prospective harm alleged in the complaint is too speculative to create an injury in fact.  The Court cannot assume that because the HALT Act was passed, inmates in New York prisons will commit more violent acts.  Plaintiffs' claims regarding the HALT Act, therefore, are dismissed.

## C.    State-Created Danger

The Due Process Clause of the Fourteenth Amendment protects persons against deprivations of "life, liberty, or property." U.S. Const. amend. XIV, § 1.  The Due Process Clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago Cty. Dept. of Soc. Serv.*, 489 U.S. 189, 195 (1989).  As such, the Due Process Clause does not require state protection against private violence. *DeShaney*, 489 U.S. at 197.  But there are two exceptions: where the state either (1) "assisted in creating or increasing the danger to the victim," or (2) had a "special relationship" with the victim. *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008).  Plaintiffs allege that the NYCLU Settlement and the HALT Act unconstitutionally expose Plaintiffs to state-created danger.  To state a claim under the state-created danger doctrine, the complaint must allege that (1) a government official took an affirmative act that created the danger and (2) the

official's conduct was so egregious that it shocks the contemporary conscience. *See Lombardi v. Whitman*, 485 F.3d 73, 79-81 (2d Cir. 2007).

Assuming the state-created danger exception applies to governmental workplaces,[4] it is clear that Defendants' actions do not shock the contemporary conscience. "In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offensive to human dignity." *Id.* at 81. The "shock the conscience" standard is not easily met; the plaintiff must show that the government's conduct was "egregious" and "outrageous," "not merely incorrect or ill-advised." *Ferran v. Town of Nassau*, 471 F.3d 363, 369-70 (2d Cir. 2006) (quotation omitted).

"[N]egligently inflicted harm is categorically beneath the threshold of constitutional due process.... [Conversely,] conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) (citations omitted). In between these two extremes is deliberate indifference, which may, under certain circumstances, shock the conscience. *See id.*; *Lombardi*, 485 F.3d at 82. "As the very term deliberate indifference implies, the standard is sensibly employed only when actual deliberation is practical...." *Lewis*, 523 U.S. at 851. "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal

---

[4] In *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 126 (1992), the Supreme Court held "[n]either the text nor the history of the Due Process Clause supports petitioner's claim that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause." In *Pauluk v. Savage*, 836 F.3d 1117 (9th Cir. 2016), however, the Ninth Circuit differentiated between the constitutional right to a safe working environment, which the Supreme Court rejected in *Collins*, and the application of the state-created danger exception into the workplace, which Plaintiffs allege here. *But see Slaughter v. Mayor & City Council of Baltimore*, 682 F.3d 317, 322 (4th Cir. 2012) (holding that *Collins* bars the state-created danger exception from applying to governmental workplaces); *White v. Lemacks*, 183 F.3d 1253, 1258 (11th Cir. 1999) (same).

actor disregarded a known or obvious consequence of his action." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410 (1997); *see Okin v. Village of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 432 (2d Cir. 2009) (using custodial relationship deliberate indifference case law for state-created danger analysis).  Plaintiffs allege that Defendants have demonstrated deliberate indifference.  *See* Dkt. No. 18 at 25-28.

"[C]ourts should operate from a 'presumption that the administration of government programs is based on a rational decisionmaking process that takes account of competing social, political, and economic forces.'" *Lombardi*, 485 F.3d at 84 (quoting *Collins v. City of Jarker Heights*, 503 U.S. 115, 128 (1992)).  The presence of significant countervailing obligations will preclude official actions from shocking the conscience.  *See id.* at 83 (citing cases).  Where a state official must allocate risk, the decision "may be a burden on the conscience of the one who must make the decisions, but does not shock the contemporary conscience." *Id.* at 85.  In this situation, "only an intent to cause harm arbitrarily can shock the conscience in a way that justifies constitutional liability." *Id.* at 75.  In *Lombardi*, for example, the plaintiffs alleged that the EPA knowingly made false statements in the wake of the September 11 attacks that there was no risk to public health in the area surrounding Ground Zero.  *See id.* at 77.  The Second Circuit found that the EPA held a countervailing obligation to restore order after the attack and, because of this obligation their actions did not shock the conscience.  *See id.* at 83, 85.

*Correction Officers' Benevolent Ass'n, Inc. v. City of New York*, No. 17 CV 2899, 2018 WL 2435178 (S.D.N.Y. May 30, 2018) is also instructive.  Nearly identical to the case at hand, the plaintiffs brought a state-created danger claim, alleging that newly adopted policies regarding the use of solitary confinement increased violence in New York City jails by eighteen percent.  *Id.* at *2.  The court rejected the plaintiffs' claim, holding:

Courts have acknowledged, however, that government action often necessitates decisions that inherently involve weighing the risk to the safety and welfare of one group against that of another or the advancement of other public policy goals. *Collins*, 503 U.S., at 128-29; *Lombardi* 485 F.3d at 83-85. The Second Circuit, recognizing a government's need to make such difficult decisions, has held that deliberately indifferent policy actions of government actors cannot shock the conscience in a constitutional sense where they seek to accommodate competing governmental interests even if the decision-making official, aware of the risks to a particular group, makes a poor choice resulting in grave consequences. *Lombardi*, 48 F.3d at 83-85. Thus, liability cannot be imposed under the deliberate indifference standard when a governmental entity acts subject to the pull of competing governmental obligations. *See id.* at 85. In such circumstances, a substantive due process violation cannot be found unless the government action was undertaken arbitrarily or with the intent to harm. *See also Benzman v. Whitman*, 523 F.3d 119, 128 (2d Cir. 2008) (finding that, in light of competing public policy considerations, a state-created danger claim could only succeed if plaintiff alleged that the government "acted with intent to harm").
…

Here, Plaintiffs allege that Defendants prioritized the safety of DOC's inmates over that of the COs and violated Plaintiffs' right to substantive due process through deliberate indifference to the implications CO safety of their policy changes. Although the COs perform vital work in an inherently dangerous environment, this attention to the safety of DOC's inmates, who themselves enjoy a special relationship with the City entitling them to protection pursuant to the Due Process Clause, is exactly the type of competing obligation that makes liability based on the deliberate indifference standard inappropriate. ... Recognition of a viable cause of action based on that standard in this context would essentially impose constitutional liability on the DOC for any policy that foreseeably and markedly increased the risks to the safety of either DOC staff or DOC inmates, thereby effectively paralyzing the agency in any action designed to protect either group.

*Correction Officers' Benevolent Ass'n, Inc*, 2018 WL 2435178, at *4. The court went on to say,

"[t]he parties have not cited, and the Court's research has not disclosed, any precedent in which

another court has held the deliberate indifference standard sufficient to support a substantive due

process claim where a valid and articulated competing government obligation was a factor in the challenged conduct." *Id.* at *5.

Identically, here, the New York State Legislature and DOCCs balanced competing interests. The use of solitary confinement is a competing social, political, and economic interest. Prisoners in the State of New York "enjoy a special relationship" with Defendants, "entitling them to protection pursuant to the Due Process Clause." *Id.* at *4. Whether Defendants' actions here "shock the conscience," therefore, must be analyzed with due consideration of the competing interests. As such, the Court finds that Plaintiffs have failed to allege any conduct "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n.8. Balancing the use of solitary confinement on prisoners with workplace safety for correction officer is exactly the type of competing obligation where courts have refused to find state-created dangers. *See Correction Officers' Benevolent Ass'n, Inc*, 2018 WL 2435178, at *4-*5. The deliberate indifference standard is inappropriate under such circumstances, and Plaintiffs do not allege that "the government action was undertaken arbitrarily or with the intent to harm." *Id.* at *4.

The Court recognizes the serious dangers correction officers face. Correction officers serve an important and irreplaceable role in caring for the State's inmates. But it strains credulity to allege that the Fourteenth Amendment's guarantee that no State shall "deprive any person of life, liberty, or property, without due process of law" imposes a constitutional obligation on the State of New York to use solitary confinement against individuals under twenty-one or over fifty-five; or that New York State is constitutionally obligated to allow use of solitary confinement of prisoners for more than fifteen days at a time.

Accordingly, Plaintiffs' complaint is dismissed.

17

**D.      Motion to Amend**

Plaintiffs, in their reply, request leave to amend their complaint.[5]  According to Rule 15 of the Federal Rules of Civil Procedure, since more than twenty-one days have elapsed since service of the complaint, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, leave will only be granted absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Because amendment to the complaint would be futile, Plaintiffs' request is denied.

An amendment of a pleading is considered "futile" when the proposed new claim would not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).  Plaintiffs have indicated that they intend to include a November 22, 2021 memorandum by Defendant Annucci titled "Assaults on Staff and Facility Safety." *See* Dkt. No. 19 at ¶ 4.  Plaintiffs argue that the memorandum "further supports its claims of imminency of harm relative to standing and supports its substantive arguments that Defendants affirmatively created and increased workplace danger to correction staff." *Id.* at ¶ 7.

For the reasons discussed above, additional evidence that violence was increasing in New York prisons in November 2021 does not impact the Court's holding.  The November 2021

---

[5] The Court notes that Plaintiffs failed to comply with Local Rule 15.1, which directs that a motion for leave to amend a pleading must (1) attach an unsigned copy of the proposed amended pleading, and (2) set forth specifically the proposed amendments, and identify the amendments in the proposed pleading, either through the submission of a red-lined version of the original leading or other equivalent means. *See* N.D.N.Y. L.R. 15.1(a).  Plaintiffs failed to move for leave to

memorandum does not create an injury in fact.  The risk that a third party will break the law or cause an injury at some future unspecified date in an unspecified manor is too speculative to create an injury in fact.  *See Lyons*, 461 U.S. 95.  Plaintiffs' claim that the HALT Act will increase violence is too speculative to create an injury in fact because "the reality is that crime is notoriously difficult to predict."  *Arpaio*, 797 F.3d at 22.  Additional evidence that crime is increasing before the implementation of the HALT Act will not impact the Court's determination of whether the HALT Act itself will increase violent acts in prisons.

Additionally, the November 2021 memorandum would not alter the Court's conclusion that significant countervailing obligations, like those that exist here, precludes official actions from shocking the conscience.  *Lombardi*, 485 F.3d at 83.  Where a state official must allocate risk, the decision "may be a burden on the conscience of the one who must make the decisions, but does not shock the contemporary conscience."  *Id.* at 85.  The level of violence in New York prisons in November 2021 does not alter the Court's conclusion that reforms to solitary confinement do not shock the conscience and the state-created danger exception does not apply to Plaintiffs' claims.  Accordingly, Plaintiffs' request to amend their complaint is denied.

### IV. CONCLUSION

After careful review of the record, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** Defendants' motion to dismiss (Dkt. No. 15) is **GRANTED;** and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

---

amend the complaint and did not comply with this Court's Local Rules.  *See* Dkt. No. 37.

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 16, 2022
       Albany, New York

Mae A. D'Agostino
U.S. District Judge